O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| STAR INSURANCE CO., | Case No.: SACV 13-1930 DOC(DFMx) |
|       Plaintiff, | |
|    vs. | **ORDER** |
| SUNWEST METALS, INC., THOMAS DUNLAP INSURANCE AGENCY, LLC; DEAN T. DUNLAP; THOMAS T. DUNLAP; | **GRANTING IN PART AND DENYING IN PART PLAINTIFF STAR INSURANCE CO.'S MOTION FOR SUMMARY JUDGMENT [40];** |
|       Defendants. | **DENYING DEFENDANT SUNWEST METALS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT [43];** |
| SUNWEST METALS, INC. | **GRANTING THIRD-PARTY DEFENDANT G.J. SULLIVAN INSURANCE CO.'S MOTION FOR SUMMARY JUDGMENT [42]** |
|       Counterclaimant / | |
|       Third-Party Plaintiff | **DENYING MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL** |
|    vs. | |
| STAR INSURANCE CO., | |
|       Counter Defendant, | |
| THOMAS DUNLAP INSURANCE AGENCY, LLC; DEAN T. DUNLAP; THOMAS T. DUNLAP; G.J. SULLIVAN INSURANCE CO., | |
|       Third-Party Defendants. | |

Before the Court are Plaintiff Star Insurance Company's Motion for Summary Judgment ("Star Mot.") (Dkt. 40); Defendant Sunwest Metals, Inc.'s Motion for Judgment on the Pleadings or, in the Alternative, Motion for Partial Summary Judgment ("Sunwest Mot.") (Dkt. 43); and Third-Party Defendant G.J. Sullivan Insurance Company's Motion for Summary Judgment ("Sullivan Mot.") (Dkt. 42). After reviewing the papers and additional briefing, and considering the parties' oral arguments, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Summary Judgment; DENIES Defendant's Motion for Summary Judgment;[1] GRANTS Third-Party Defendant's Motion for Summary Judgment; and DENIES Plaintiff's Motion to Certify Order for Interlocutory Appeal.

## I.  Background

This case arises from alleged misrepresentations made by Third-Party Defendants Thomas Dunlap Insurance Agency LLP, Dean T. Dunlap, and Thomas R. Dunlap ("Dunlap Defendants") in the course of obtaining an insurance policy from Plaintiff Star Insurance Company ("Star Insurance") for Defendant Sunwest Metals, Inc. ("Sunwest Metals"). Sunwest Metals, a recycling company in Anaheim, California, suffered an arson fire on its property in April 2013, which allegedly resulted in over $1 million in financial losses. Third-Party Compl. ¶ 70 (Dkt. 8). Star Insurance advanced Sunwest $130,000 in relation to the fire loss claim. Kaufman Decl. ¶ 4; Star-Ex. U (Dkt. 41-2). Star Insurance now claims that Sunwest Metals, through its insurance broker the Dunlap Defendants, made material misrepresentations on its insurance application and that the insurance contract should be rescinded and all insurance payments made pursuant to the Policies returned.[2] Sunwest Metals asserts various counterclaims against Star Insurance as well as third-party claims against the Dunlap Defendants and Third-Party Defendant G.J. Sullivan Co. Excess and Surplus Line Brokers ("G.J. Sullivan")

---

[1] Because both Plaintiff Star Insurance and Defendant Sunwest Metals cite evidence outside of the pleadings, the Court will treat Sunwest Metals's motion for judgment on the pleadings as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) ("[J]udgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment.")

[2] Besides the $130,000 advance related to the April 2013 fire, Star Insurance has also paid first-party claims to Sunwest Metals in the following amounts: $4,322 on August 23, 2012 (theft), and $4,654.23 on May 20, 2013 (equipment damage). Declaration of Rande Kaufman ¶ 4 (Dkt. 40-2).

(erroneously sued as G.J. Sullivan Insurance Company), the company that bound Sunwest Metals's Star Insurance policy.

### A. Facts

#### 1. Formation of Insurance Policies

Star Insurance issued two consecutive policies to Sunwest Metals with policy periods from August 1, 2011 to August 1, 2012 ("'11-'12 Policy") and from August 1, 2012 to August 1, 2013 ("'12-'13 Policy") (collectively, the "Policies"). Star Insurance's Statement of Uncontroverted Facts ("Star-UF") No. 1; G.J. Sullivan's Statement of Uncontroverted Facts ("GJ-UF") Nos. 2-3.[3] The Dunlap Defendants represented Sunwest Metals with respect to the Policies. Star-UF No. 3; GJ-UF Nos. 4-6. It is undisputed that G.J. Sullivan and its employees Marlene Priolo and Deborah Mesko represented Star Insurance with respect to the Policies, Star-UF No. 2; GJ-UF Nos. 7-8, although Sunwest Metals asserts that, legally, G.J. Sullivan was also its representative with respect to the Policies.

#### a. Misrepresentations in 2011

On May 16, 2011, Tom Dunlap emailed Ms. Priolo of G.J. Sullivan. Star-UF No. 4. Attached to the email was a completed but unsigned copy of "G.J. Sullivan Co. Scrap Recycling Supplemental Questionnaire" ("2011 Supplemental Questionnaire"), an eight-page document. Star-UF Nos. 5-6. Page 1 of the 2011 Supplemental Questionnaire stated the following regarding Sunwest Metals's annual revenue:

//

//

//

//

//

---

[3] For ease of reference, the Court will refer to Star Insurance's Statement of Uncontroverted Facts (Dkt. 41), Sunwest Metals's Statement of Genuine Disputes (Dkt. 48-1), and Star Insurance's Reply to the Statement of Genuine Disputes (Dkt. 50) collectively as "Star-UF" and will use the numbering used by the parties. The Court will refer to G.J. Sullivan's Statement of Uncontroverted Facts (Dkt. 44), Sunwest Metals's Statement of Genuine Disputes (Dkt. 47-1), and G.J. Sullivan's Response to Sunwest Metals's Additional Disputed Facts (Dkt. 52-3) collectively as "GJ-UF" and will use the numbering used by the parties.

## OPERATIONS

RECYCLING AND PROCESSING MATERIAL – (INDICATE % OF ANNUAL SALES/REVENUE):

| METAL | | | NON-METAL | | |
|---|---|---|---|---|---|
| **Type of Metal** | **Percentage of Annual Sales/Revenue** | | **Type of Metal** | **Percentage of Annual Sales/Revenue** | |
| Aluminum: | % *80* | | Plastic: | *SMALL AMOUNTS* % | |
| Brass: | % | | Rubber: | % | |
| Chomium: | % | | Paper: | % | |
| Copper: | % | | Glass: | % | |
| Iron/Steel: | % *20* | | Cloth: | % | |
| Lead: | % | | Chemical: | % | |
| Nickel: | % | | Concrete: | % | |
| Zinc: | % | | Other | % | |
| Other: | % | | | | |

### ANNUAL VOLUME FOR LAST 4 YEARS

| | TONNAGE | TOTAL ANNUAL SALES/REVENUE |
|---|---|---|
| 2009-2010 | *1500* | *5,000,000* |
| 2008-2009 | *1600* | *6,000,000* |
| 2007-2008 | *1500* | *5,000,000* |
| 2006-2007 | *1600* | *6,000,000* |

Star-UF No. 9. The representations in the 2011 Supplemental Questionnaire that Sunwest Metals's annual revenue from recycling and processing materials was 80% from aluminum recycling, 20% steel, and only small amounts from non-metals were inaccurate. Star-UF No. 10.

On July 7, 2011, Ms. Priolo emailed Tom Dunlap asking for "the complete details on the plastic and paper recycling – in both revenue and actual amounts on the premises." He responded, "SCRAP PLASTIC REVENUE=$5,000, USED NEWSPAPER PAPER REVENUE=$10,000." Star-UF Nos. 11-14. This representation was also inaccurate. Star-UF No. 15.

Although Sunwest Metals does not challenge the inaccuracy of the representations in the 2011 Supplemental Questionnaire and in Dunlap's 2011 email, Sunwest Metals argues that it never authorized the Dunlap Defendants to make the representations. Before binding the '11-'12

Policy, Ms. Priolo received a copy of the 2011 Supplemental Questionnaire , signed by Hanan Stanley of Sunwest Metals. The signed copy contains the eight pages of the questionnaire plus an additional copy of the eighth page attached at the end. The signature appears on the ninth page. Star-UF Nos. 7-8. Sunwest Metals asserts that Dunlap Defendants only gave Mr. Stanley, Sunwest Metals's owner, the eighth page to sign and that neither Mr. Stanley nor anyone else from Sunwest Metals ever saw the first seven pages until September 2013, nor did they provide the information on page 1. Star-UF No. 50. Sunwest Metals also contends that, prior to September 2013, no one at Sunwest Metals knew of or approved of the July 7, 2011 email. Star-UF No. 51.

### b. Misrepresentations in 2012

On September 24, 2012, Dean Dunlap emailed Ms. Priolo a completed and signed "G.J. Sullivan Co. Scrap Recycling Supplemental Questionnaire" ("2012 Supplemental Questionnaire"). Star-UF Nos. 16-17. The 2012 Supplemental Questionnaire stated the following regarding Sunwest Metals's annual revenue:

### OPERATIONS

RECYCLING AND PROCESSING MATERIAL – (INDICATE % OF ANNUAL SALES/REVENUE):

| METAL | | | NON-METAL | | |
|---|---|---|---|---|---|
| Type of Metal | Percentage of Annual Sales/Revenue | | Type of Metal | Percentage of Annual Sales/Revenue | |
| Aluminum: | 80 | % | Plastic: | MIN | % |
| Brass: | | % | Rubber: | | % |
| Chromium: | | % | Paper: | MIN | % |
| Copper: | | % | Glass: | MIN | % |
| Iron/Steel: | 20 | % | Cloth: | | % |
| Lead: | | % | Chemical: | | % |
| Nickel: | | % | Concrete: | | % |
| Zinc: | | % | Other | | % |
| Other: | | % | ALL ARE SMALL AMOUNT OF SALES | | |

Star-UF No. 19. The representations in the 2012 Supplemental Questionnaire that Sunwest Metals's annual revenue from recycling and processing materials was 80% from aluminum recycling, 20% steel, and only small amounts from non-metals were inaccurate. Star-UF No. 20.

On October 18, 2012, Ms. Priolo emailed Dean Dunlap, stating, "In review of the physical inspection that was conducted for the mentioned insured, it indicates that his operations consist of 'purchasing aluminum, glass and paper from individuals to fill large bins and then sells the bins to a larger recycling company.' However, per the supplemental that was submitted to our office, their operations consist of the processing of 80% Aluminum and 20% Iron & Steel. Please confirm the operations and advise within 10 days from todays [sic] date." On November 2, 2012, Dean Dunlap responded, "The application is correct. 80% Aluminum ($4.0M in sales) 20% Iron/Steel ($1.0M in sales). Each day the amount varies. The day the inspector came in may have had slightly different numbers. The application is an average of the entire policy year." Star-UF Nos. 21-24. Dunlap's email was inaccurate. Star-UF No. 25.

Sunwest Metals contends that it did not authorize these representations either. Sunwest Metals's owner, Mr. Stanley, asserts that he did not sign the 2012 Supplemental Questionnaire and never saw it until September 2013. Star-UF No. 52. The signature on the eighth page of the 2012 Supplemental Questionnaire looks like Mr. Stanley's name, but it appears markedly different from the signature on the 2011 Supplemental Questionnaire. *Compare* Star-Ex. 39 (Dkt. 45-3) *with* Star-Ex. 48 (Dkt. 45-3).[4] Sunwest Metals also contends that no one at Sunwest Metals knew of the November 2, 2012 email prior to September 2013, nor did anyone approve the email. Star-UF No. 53.

It is undisputed that, contrary to what the Dunlap Defendants represented, in reality, paper was Sunwest Metals's largest commodity (or at least a significantly large commodity) in terms of volume and revenue during June 2010 to April 2013. *See* Star-Ex. T (Dkt. 45-1).

### c.  Role of G.J. Sullivan

As mentioned above, both parties agree that G.J. Sullivan represented Star Insurance with respect to the Policies, Star-UF No. 2; GJ-UF Nos. 7-8. Sunwest Metals asserts that, however,

---

[4] For ease of reference, the Court will cite to the exhibits filed by Star Insurance using the prefix "Star-Ex," to the exhibits filed by Sunwest Metals using the prefix "Sunwest-Ex," and to the exhibits filed by G.J. Sullivan using the prefix "G.J.-Ex."

that, legally, G.J. Sullivan was also its representative with respect to the Policies. The facts relevant to G.J. Sullivan's role are as follows:

On July 8 and 26, 2011, Marlene Priolo of G.J. Sullivan sent Star Insurance's quotes for Sunwest Metals to the Dunlap Defendants. Those quotes listed Star Insurance as the insurance company and G.J. Sullivan as Star Insurance's agent. G.J.-Ex. 15 (Dkt. 44-1); G.J.-Ex. 34 (Dkt. 52-1). Thus, it was disclosed to both the Dunlap Defendants and Sunwest Metals that G.J. Sullivan was acting as Star Insurance's agent in relation to the Policies as of July 8, 2011. There is also evidence that the Dunlap Defendants were aware as early as May 5, 2011 that G.J. Sullivan was acting as some insurance carrier's general agent in relation to the Sunwest Metals account because Tom Dunlap and G.J. Sullivan entered into a Producers Agreement which described G.J. Sullivan as the "General Agent" that "represented" insurance carriers and prevented Dunlap from binding any insurance carrier represented by G.J. Sullivan until G.J. Sullivan had authorized the risk. G.J.-Ex. 7 (Dkt. 44-1).

## 2. Star Insurance's Underwriting Guidelines

Star Insurance's Scrap Dealers Program Underwriting Guidelines during the 2011 to 2013 period states:

> This is a fully insured program providing Property, Inland Marine, Crime, Garage, General Liability, Automobile, Workers' Compensation and Umbrella coverage. The coverage will be written in Star Insurance Company.

> The program is designed for risks focused in the metal scrap and glass recycling industry. . . . Plastic and paper recycling are eligible for the program when they are incidental exposures. Property coverage for these recycled commodities will be considered subject to Star Insurance underwriting approval.

> All other operations to metal scrap recycling such as Demolition, Product Manufacturing, Surplus Product distribution are subject to Star Insurance underwriting approval.

Star-UF Nos. 27-28.

Star Insurance asserts that none of Star Insurance's or G.J. Sullivan's underwriters has ever seen Star Insurance knowingly issue a policy to a scrap recycler who derives more than

15% of its annual revenue from paper and/or plastic. Declaration of Jeffrey Jacobs ¶ 6 (Dkt. 40-5); Mesko Dep. 132:24-133:6, Sept. 16, 2014. Star Insurance asserts that, had it been disclosed that paper was Sunwest Metals's largest commodity, Star Insurance would not have issued an insurance policy to Sunwest Metals. *See* Star-UF No. 33. Jacobs Decl. ¶ 13; LeMoine Dep. 134:7-136:11, Sept. 8, 2014.

### 3. Star Insurance's Inquiry Notice Regarding Sunwest Metals's Paper and Plastic Recycling

Sunwest Metals, on the other hand, asserts that, despite the inaccurate disclosures by the Dunlap Defendants, Star Insurance knew or should have known that Sunwest Metals did a significant volume of business in paper and plastics based information readily available to Star Insurance, including information that Star Insurance agents actually saw online or through inspecting Sunwest Metals's physical facility.

Sunwest Metals argues that the presence of large cardboard bales at Sunwest Metals's physical location would have been obvious through looking at Google Earth photos or aerial photos of Sunwest Metals's physical site displayed in Sunwest Metals's office. Star-UF Nos. 46, 48. However, there is no evidence that any Star Insurance agents actually looked at these.

Sunwest Metals's website contained photographs and text describing the scope of Sunwest Metals's operations and the types of material that it handled, including paper, cardboard, and plastic. Star-UF No. 45. It is undisputed that Michelle LeMoine, a Star Insurance underwriter,[5] reviewed the website. The website raised questions in her mind, so on June 30, 2011, she emailed Ms. Priolo of G.J. Sullivan directing Ms. Priolo to get "the complete details on plastic and paper – in both revenue and actual amount on the premises." Star-UF No. 55. Tom Dunlap's response to Ms. Priolo's inquiry was the July 7, 2011 email described above: "SCRAP PLASTIC REVENUE=$5,000, USED NEWSPAPER PAPER REVENUE=$10,000." Star-UF Nos. 11-14.

---

[5] The Star Insurance underwriters who handled the Sunwest Metals account were all formally employed by either G.J. Sullivan or Meadowbrook, Inc. ("Meadowbrook"), which provides underwriting and claims services for Star Insurance. Declaration of Susan Scurti ¶ 2 (Dkt. 40-1).

Also on June 30, 2011, Ms. LeMoine emailed corporate underwriter Bob King, stating that she wanted "to verify the plastic and paper recycling . . . per the agent plastic is incidental and paper is not addressed but from the web-site appears there is some – I've requested exact details and will advise you when received." Star-UF No. 56. On July 9, 2011, Mr. King emailed Jeff Jacobs, another underwriter, stating "The amount of plastic and paper recycling appears to be minimal, but we will want to see the loss control report with an emphasis on property to confirm." Star-UF No. 57. On August 30, 2011, Sue Dubetz, Ms. LeMoine's assistant, emailed Ms. Priolo, asking, "was loss control ordered on this account?" In Ms. Priolo's ten years of working for G.J. Sullivan, she had never had someone from Star Insurance ask for a copy of a loss control report from G.J. Sullivan. Star-UF No. 58.

In September 2011, Pacific Inspections, Inc. ("Pacific Inspections") performed a physical inspection of Sunwest Metals's facility on behalf of Star Insurance and was shown the outside yard where Sunwest Metals keeps its paper and plastic. Large cardboard bales are plainly visible in the yard. Star-UF Nos. 47, 59. Pacific Inspections's Loss Control Inspection Report, given to Star Insurance and G.J. Sullivan on October 5, 2011, described Sunwest Metals as a "recycling company" which "b[ought] aluminum, glass and paper from individuals and fill[ed] large dumpster bins" which were then "s[old] to a larger recycling company." Star-UF No. 60.

In January 2012, Pacific Inspections performed a second physical inspection of Sunwest Metals's facility on behalf of Star Insurance and was again shown the yard where Sunwest Metals keeps its paper and plastic. Pacific Inspections's second inspection report, given to Star Insurance in January 2012, indicated "the risk is a recycling company" and included photographs of Sunwest Metals's facility. Star-UF No. 62. It is disputed whether it was obvious from the photos that Sunwest Metals handled and stored a large amount of paper products. *See* Sunwest-Ex. 24 (Dkt. 43-29) (indistinct photos).

Also in 2012, Star Insurance received a report from an California's Workers' Compensation Insurance Rating Bureau's (WCIRB's) inspection done in 2008, which stated that Sunwest Metals's dealings with paper and cardboard constituted at least 35% of its operations,

and that Sunwest Metals was a paper and bottle dealer. Sunwest-Exs. 12, 25 (Dkts. 43-17, 43-30).

In March 2013, Star Insurance ordered an audit of the Sunwest Metals account. The audit report stated that Sunwest Metals processes cardboard, plastics, various grades of paper, newspaper, office paper, and CRV beverage containers. Star-UF No. 64.

### 4. April 2013 Fire and Aftermath

On April 21, 2013, Sunwest Metals suffered a fire loss. Photographs of the fire damage depicted a large amount of paper or cardboard. Star-UF Nos. 34-35. Star Insurance took an examination under oath of Mr. Stanley, Sunwest Metals's owner, on September 16, 2013, in which he testified that paper was Sunwest Metals's largest community both in terms of volume and revenue dollars. Stanley Exam. Under Oath ("EUO") 13:9-12, 47:21-48:10, Sept. 16, 2013. Star Insurance then obtained Sunwest Metals's daily records in October 2013. The records were analyzed by a licensed certified public accountant, who provided his analysis on December 5, 2013. Star-UF Nos. 36-38. Star Insurance filed this action on December 12, 2013. *See* Compl. (Dkt. 1). It is undisputed that Star Insurance had never sought to rescind or cancel the policies and had collected premiums from Sunwest Metals until after the April 2013 fire. Star-UF No. 65. In March 2014, Star Insurance refunded the premiums that Sunwest Metals had paid for the Policies, a total amount of $48,307. Star-UF Nos. 40-42.

### B. Procedural History

Star Insurance filed suit in this Court on December 12, 2013. *See* Compl. (Dkt. 1). The First Amended Complaint (Dkt. 34) alleges four claims:

(1) Rescission of the '11-'12 Policy, against Sunwest Metals

(2) Rescission of the '12-'13 Policy, against Sunwest Metals

(3) Equitable indemnity / reimbursement / restitution, against Sunwest Metals

(4) Negligent misrepresentation, against Dunlap Defendants

Star Insurance's motion for summary judgment and Sunwest Metal's motion for judgment on the pleadings address the first three claims.

On February 6, 2014, Sunwest Metals filed a Counterclaim and Third-Party Complaint (Dkt. 8), alleging the following claims:

(1) Breach of contract of insurance, against Star Insurance

(2) Breach of covenant of good faith and fair dealing, against Star Insurance

(3) Negligence, against Dunlap Defendants and G.J. Sullivan

(4) Breach of fiduciary duty, against Dunlap Defendants

(5) Breach of contract, against Dunlap Defendants

(6) Equitable indemnity, against Dunlap Defendants and G.J. Sullivan

(7) Declaratory relief, against Star Insurance, Dunlap Defendants, and G.J. Sullivan

Star Insurance seeks summary judgment on Sunwest Metals's breach of contract, breach of covenant of good faith and fair dealing, and declaratory relief claims against it, on the theory that if summary judgment is granted in favor of Star Insurance on its rescission claims, Sunwest Metals's counterclaims against Star Insurance necessarily fail. G.J. Sullivan seeks summary judgment on Sunwest Metals's claims against it, negligence, equitable indemnity, and declaratory relief.

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving

party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III.  Discussion

### A.  Rescission of '11-'12 and '12-'13 Policies

Star Insurance seeks summary judgment that rescission of the '11-'12 and '12-'13 Policies is proper. Sunwest Metals cross-moves for a judgment on the pleadings, or in the alternative, summary judgment that Star Insurance's rescission and equitable indemnity claims against it fail because Star Insurance did not allege and cannot prove that the misrepresentations were intentional. Neither Star Insurance nor Sunwest Metals dispute that the statements made during the insurance application process regarding the volume of Sunwest Metals's paper and plastic recycling business were false. The parties' main dispute is (1) whether Sunwest Metals had the requisite level of intent to justify rescission under California's Insurance Code. Sunwest Metals also argues that there are genuine issues of material fact as to the rescission claims because Star Insurance had notice that the representations were inaccurate and thus (2) Star Insurance waived the alleged misrepresentations by failing to conduct a reasonable inquiry; (3)

Star Insurance unduly delayed giving notice of rescission, prejudicing Sunwest Metals; and (4) the alleged misrepresentations were not subjectively material to Star Insurance.

### 1.  Level of Intent Required for Rescission Under California Insurance Code

The parties disagree on what level of intent is required for rescission under the California Insurance Code. Star Insurance argues that "[c]oncealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Cal. Ins. Code § 331. "Neglect to communicate that which a party knows, and ought to communicate, is concealment." Cal. Ins. Code § 330. *See also* Cal. Ins. Code § 359 ("If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false.").

Sunwest Metals argues that the policy it was issued was a fire insurance policy subject to California Insurance Code §§ 2070 and 2071, which Sunwest Metals interprets as requiring willful misrepresentations. California Insurance Code § 100 divides insurance policies in the state into different classes, one of which is fire insurance. Fire insurance includes insurance "against loss by fire, lightning, windstorm, tornado or earthquake." Cal. Ins. Code § 102(a). California Insurance Code § 2070 provides that all fire insurance policies must be on the standard form provided in § 2071 or must, be "substantially equivalent to or more favorable to the insured than [the coverage] contained in [the] standard form fire insurance policy." The "Concealment, fraud" provision in the standard form states:

> **Concealment, fraud**
> This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

Cal. Ins. Code § 2071.

//

//

Sunwest Metals also argues that the language in the Policies themselves should control, based on California Insurance Code § 336.[6] Under California's Insurance Code, "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Cal. Ins. Code § 332. However, "[t]he right to information of material facts may be waived . . . (a) by the terms of insurance . . . ." *Id.* § 336.

The Policies at issue in this case state:

> We do not provide coverage to the insured ("insured") who, whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:
>
> 1. This Coverage Part;
> 2. The Covered Property;
> 3. That insured's ("insured's") interest in the Covered Property; or
> 4. A claim under this Coverage Part or Coverage Form.

Star-UF No. 49.

Star Insurance relies heavily on *Mitchell v. United Nat. Ins. Co.*, 127 Cal. App. 4th 457 (2005), which had closely analogous facts to the case at bar. In *Mitchell*, the California court of appeals held that "an insurer may, under Insurance Code sections 331 and 359, rescind a fire insurance policy based on an insured's negligent or unintentional misrepresentation of a material fact in an insurance application, notwithstanding the *willful* misrepresentation clause included in the required standard form insurance policy (Ins. Code §§ 2070 and 2071)." *Id.* at 463. The court reasoned that the language of §§ 2070 and 2071 did not expressly restrict the application of

---

[6] Sunwest Metals also cites California Insurance Code § 650 for the proposition that the terms of the insurance contract may limit the insurer's ability to rescind based on negligent misrepresentation. Section 650 provides, "Whenever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract. The rescission shall apply to all insureds under the contract, including additional insureds, unless the contract provides otherwise." Cal. Ins. Code § 650. The Court agrees with Star Insurance that § 650 provides weak support indeed for this proposition, as § 650 does not address the level of intent required for rescission; it only provides that the contract terms can dictate which insureds are affected by the rescission. Since Sunwest Metals is the only insured under the Policies at issue in this case, § 650 does not appear to apply in this case.

other statutory provisions such as §§ 331 and 359. The court further determined that, although §§ 331, 359, and 2071 all apply to misrepresentations made at any time, §§ 331 and 359 "normally govern the parties' obligations during formation of the insurance contract, and allow an insurer to *rescind* a fire insurance policy based on an insured's negligent or unintentional concealment or misrepresentation of a material fact" while § 2071 "typically is exercised in connection with a claim for policy benefits," with "willful concealment or misrepresentation result[ing] in a *voiding* of the policy." *Id.* at 473.

Sunwest Metals relies heavily on *Clarendon Nat. Ins. Co. v. Ins. Co. of the W.*, 442 F. Supp. 2d 914, 932 (E.D. Cal. 2006). The insurance policy at issue in *Clarendon* was not a fire insurance policy. The policy contained a "concealment, misrepresentation or fraud" provision which stated that the policy was "void in any case of fraud by [the insured] at any time as it relates to this Coverage Form. It is also void if [the insured], at any time, intentionally conceal or misrepresent a material fact . . ." *Id.* at 922. The question before the court was whether, under this contractual provision, the rescission based on a material misrepresentation made on the insurance application required intentional or willful misrepresentation or if the "intentional or unintentional" standard applied from California Insurance Code § 331. The insurance company in the case argued that the principle in *Mitchell* that § 331 should normally apply to misrepresentations made in the application process. However, the court in *Clarendon* declined to follow *Mitchell*. *Id.* at 928. Instead, it held that intentional or willful misrepresentations were required for rescission because, under contract interpretation principles, ambiguous policy provisions should be interpreted according to the reasonable expectation of the promise, here a layperson who could not be expected to know of the difference between rescinding and voiding a contract or the existence of an "intentional or unintentional" standard for rescission in the statutory Insurance Code, outside of the contract. *Id.* at 925-26, 932-33.

The Court agrees with Star Insurance that *Mitchell*'s holding provides the correct legal standard in this case. The *Mitchell* court's observation that the text of §§ 2070 and 2071 do not expressly restrict the application of §§ 331 and 359 to fire insurance policies is not the strongest basis for its holding, in light of the general principle that specific statutory provisions control

over general ones. *Miller v. Superior Court*, 21 Cal. 4th 883, 895 (1999); *see also* Croskey &
Kaufman, California Practice Guide: Insurance Litigation § 5:172 (Rutter, 2005) (criticizing
*Mitchell* on this basis). However, the Court is persuaded that, because § 2071 is a standard form
for an insurance contract, its terms only apply once the insurer and the insured have reached a
valid agreement. Sections 331 and 359, on the other hand, are not so limited. In addition, the
California Legislature has amended § 2071 post-*Mitchell* without changing the fraud and
concealment clause. "[W]hen the Legislature amends a statute without changing those portions
of the statute that have previously been construed by the courts, the Legislature is presumed to
have known of and to have acquiesced in the previous judicial construction." *People v. Atkins*,
25 Cal. 4th 76, 89-90 (2001). This is not to say that either other California courts or the
Legislature might not clarify the scope of § 2071's fraud or concealment standard one day. The
Court is not blind to the generally harsh effect of *Mitchell* on insureds. However, "this Court's
duty is to ascertain and apply the existing California law, not to predict that California may
change its law and then to apply [our] notion of what that change might or ought to be."
*Cabrera v. City of Huntington Park*, 159 F.3d 374, 378 (9th Cir. 1998) (internal quotation marks
omitted). Thus, the Court is persuaded that §§ 331 and 359 constitute the most appropriate
standard for rescission of an insurance contract based on material misrepresentations during the
insurance application process.

Thus, Sunwest Metals's Motion for Judgment on the Pleadings or, in the Alternative,
Partial Summary Judgment, is DENIED.

### 2.  Waiver Through Insufficient Inquiry

Sunwest Metals argues that summary judgment on Star Insurance's claims should be
denied because there is a genuine issue of material fact as to whether Star Insurance failed to
conduct a reasonable investigation, thus waiving the alleged misrepresentations.

As stated above, each party to an insurance contract has a duty to disclose material facts
to the other. Cal. Ins. Code § 332. However, a party has no obligation to disclose information (1)
that the other party already knows; (2) which the other party, "in the exercise of ordinary care . .
. ought to know, and of which the party has no reason to suppose him ignorant"; or (3) of which

-16-

the other party has waived communication. *Id.* § 333. Relatedly, "[e]ach party to a contract of insurance is bound to know . . . [a]ll the general causes which are open to his inquiry equally with that of the other, and which may affect either the political or material perils contemplated." *Id.* § 335. And, "[t]he right to information of material facts may be waived . . . (b) by neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated." *Id.* § 336. The insurer's inquiry must be reasonable. *DiPasqua v. California W. States Life Ins. Co.*, 106 Cal. App. 2d 281, 284 (1951) (holding that an insurer has a duty of further inquiry upon notice that the answers of the insured could not reasonably be replied upon); *cf. Barrera v. State Farm Mut. Auto. Ins. Co.*, 71 Cal. 2d 659, 668 (1969) (holding that the quasi-public nature of insurance and the public policy behind requiring drivers to have insurance required the insurer to make reasonable inquiry into the insured's application).

Star Insurance's Scrap Dealers Program was designed primarily for metal scrap and glass recyclers. Paper and plastic recyclers were eligible the program only when the paper and plastic recycling were incidental exposures. Based on the questions on page 1 of the Supplemental Questionnaires, Star Insurance estimates "incidental exposure" based on whether a scrap dealer derived more than 15% of its annual sales or revenue from paper and plastic recycling. Both parties agree that Star Insurance was aware that Sunwest Metals recycled some paper and plastics. That information was on Sunwest Metals's website, which Star Insurance's underwriter saw. It was also relayed to Star Insurance through various inspection reports and, indeed, was revealed on the 2011 and 2012 Supplemental Reports themselves.

What is at issue is whether the information from these sources "distinctly implied" that paper and plastic constituted more than "incidental exposures" for Sunwest Metals, and, if so, whether Star Insurance neglected to make reasonable inquiries to find out the true facts. In the Court's view, there is a genuine issue of material fact as to whether the information "distinctly implied" that Sunwest Metals derived over 15% of its annual sales or revenue from paper and/or plastic and whether Star Insurance neglected to make reasonable inquiries.

After Star Insurance's underwriter saw Sunwest Metals's website in 2011, she asked Ms. Priolo from G.J. Sullivan to get confirmation from Sunwest Metals that paper and plastic

recycling really were just incidental parts of the company's total revenue. Tom Dunlap confirmed this by responding that "SCRAP PLASTIC REVENUE=$5,000, USED NEWSPAPER PAPER REVENUE=$10,000," which were only 0.1% and 0.2% of Sunwest Metals's $5,000,000 annual sales/revenue in the previous year. Star Insurance had Pacific Inspections conduct physical inspections of the premises on two occasions because of its concern about the amount of paper and plastic recycling. Pacific Inspections reported that Sunwest Metals was a "recycling company" which "b[ought] aluminum, glass and paper from individuals and fill[ed] large dumpster bins" which were then "s[old] to a larger recycling company."

In 2012, when the Dunlap Defendants applied for the policy to be renewed, Ms. Priolo specifically asked Dean Dunlap to confirm that the 2012 Supplemental Questionnaire was correct in stating that Sunwest Metals's operations consisted of 80% aluminum and 20% iron and steel, in light of Pacific Inspections's report. Dean Dunlap confirmed those figures and added, regarding what the inspector might have seen, "Each day the amount varies. The day the inspector came in may have had slightly different numbers. The application is an average of the entire policy year."

Star Insurance argues that, as implied in Dean Dunlap's email and testified to by Sunwest Metals employee Andre McNeal, it is impossible to determine the annual revenue percentages by commodity from a single-day inspection. McNeal Dep. 204:3-207:3, Oct. 15, 2014; *see also* Stanley EUO 10:20-12:14 (testifying that he would have to analyze daily records to determine the percentage of annual revenue generated by paper and plastics versus other commodities). However, a reasonable jury could conclude that, based on the prominent display of paper and plastic recycling as one of Sunwests Metals's services on Sunwest Metals's website and based on Pacific Inspections's reports, in addition to the WCIRB report, it would have been reasonable for Star Insurance to investigate further into the annual revenue breakdown by commodity since, in Star Insurance's view, paper and plastic recycling constituted a different risk than other types of recycling.

//

Star Insurance argues that it was entitled to rely on the Dunlaps's confirmations that paper and plastic recycling were only miniscule percentages of Sunwest Metals's annual revenue. The Court agrees with Star Insurance that Star Insurance had no reason to suspect that Sunwest Metals itself did not approve the Dunlaps's representations. Sunwest Metals's owner Mr. Stanley states that he never saw the first seven pages of the 2011 Supplemental Questionnaire before he signed the eighth page; however, there was no way for Star Insurance to know that solely from the fact that an additional copy of the eighth page, with the signature, was attached after an unsigned copy of the eighth page. Mr. Stanley also states that he never signed the 2012 Supplemental Questionnaire and that someone must have forged his signature on the eighth page. The fact that Mr. Stanley's purported signature on the 2012 Supplemental Questionnaire appeared different from his signature on the 2011 Supplemental Questionnaire may raise a modicum of suspicion to someone whose job is to carefully scrutinize the two signatures. However, it is not reasonable to expect Star Insurance's underwriters to be handwriting experts, particularly when it is a common business practice for employees or other agents to sign on behalf of principals. That said, the Star Insurance had other sources of information besides the Dunlaps's misrepresentations, including the observations of their own inspectors and underwriters.

Accordingly, the Court finds that Sunwest Metals has raised a genuine issue of material fact as to whether Star Insurance had inquiry notice of the misrepresentations regarding Sunwest Metals's paper and plastic recycling such that it waived its right to receive material facts.

### 3.  Undue Delay

Sunwest Metals argues that summary judgment on Star Insurance's claims against it should be denied because there is a genuine issue of material fact as to whether Star Insurance unduly delayed giving notice of rescission, resulting in prejudice to Sunwest Metals. Pursuant to California Civil Code § 1691, a party that wishes to rescind a contract must give notice to the other party "promptly upon discovering the facts which entitle him to rescind." Delay is grounds for denying relief only if the delay was "substantially prejudicial to the other party." Cal. Civ. Code § 1693. The question of "whether the defrauded party has acted promptly is a question to

be decided by the trial court upon the facts of the particular case." *Lubarsky v. Richardson*, 218 Cal. 27, 31 (1933).

Sunwest Metals argues that Star Insurance unduly delayed because it had notice as early as June 2011 that it was entitled to rescind, but did not attempt to cancel or rescind the policies until December 2013, after the fire loss in April 2013. Since there is a genuine issue of material fact as to whether and when Star Insurance had inquiry notice of the misrepresentations, the Court cannot determine at this time whether Star Insurance unreasonably delayed. If the jury finds that Star Insurance did not have inquiry notice of the misrepresentations until after the fire in April 2013, for instance, when it examined Sunwest Metals's owner Hanan Stanley under oath in September 2013, then the Court would be satisfied that Star Insurance did not unreasonably delay giving notice of rescission to Sunwest Metals as Star Insurance promptly filed this lawsuit after receiving the accountant's analysis of Sunwest Metals's daily records on December 5, 2013. This determination will have to wait, however, until after trial.

Thus, the Court finds that Sunwest Metals has raised a genuine issue of material fact as to whether Star Insurance unduly delayed giving Sunwest Metals notice that is sought to rescind the Policies.

### 4.  Materiality

Sunwest Metals argues that there is a genuine dispute of material fact as to whether the misrepresentations made in 2011 and 2012 were subjectively material to Star Insurance. Under California Insurance Code § 334, materiality is determined "solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." Materiality "is a subjective test; the critical question is the effect truthful answers would have had on [the insurer], not on some 'average reasonable' insurer." *Mitchell*, 127 Cal. App. 4th at 474.

Sunwest Metals does not bring forth any evidence that information regarding the percentage of Sunwest Metals's annual sales and revenue coming from paper and/or plastic recycling was not important to Star Insurance's decision to insure Sunwest Metals. Sunwest

Metals only asserts that Star Insurance filed "self-serving" declarations. This is not sufficient to raise a genuine issue of material fact under *Liberty Lobby*, 477 U.S. at 252, compared to Star Insurance's underwriting guidelines, which allow scrap dealers to participate in the scrap dealers program only if plastic and paper recycling are incidental exposures, and declarations from Star Insurance's underwriters that they had never seen Star Insurance approve an account where over 15% of the insured's annual revenue came from paper and plastic recycling. Accordingly, the Court finds that Sunwest Metals has raised no genuine issue of material fact as to the materiality of the misrepresentations.

### 5. Conclusion

Rescission of an insurance policy is justified when material misrepresentations are made in the insurance application process, regardless of whether the misrepresentations were intentional or unintentional. It is undisputed that the Dunlap Defendants made misrepresentations regarding Sunwest Metals's business on the 2011 and 2012 Supplemental Questionnaires, which the Dunlap Defendants submitted to Star Insurance's agent G.J. Sullivan on Sunwest Metals's behalf as part of the application process for the '11-'12 and '12-'13 Policies. Sunwest Metals has raised no genuine issue of material fact as to the materiality of the misrepresentations. Sunwest Metals has raised, however, genuine issues of material fact as to whether Star Insurance waived its right to material facts through its failure to conduct a reasonable inquiry and whether Star Insurance's right to rescission is barred by laches. Thus, the Court GRANTS IN PART AND DENIES IN PART Star Insurance's Motion for Summary Judgment on its claims against Sunwest Metals.

### B. Equitable Indemnity / Reimbursement / Restitution

Rescission requires reimbursement because "rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage." *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1272 (2007). "Insurers seeking reimbursement . . . bear the burden of proving the proper amount of reimbursement." *Id.* at 1271. Star Insurance has brought forth evidence that it paid $138,976.23 in claims to Sunwest Metals under the Policies. Kaufman Decl. ¶ 4; Star-Ex. U (Dkt. 41-2). Sunwest Metals has not

challenged this evidence. Thus, the Court is satisfied that summary judgment is appropriate regarding the amount of the reimbursement. However, because there is genuine issue of material fact as to Sunwest Metals's defenses against rescission, granting summary judgment on the reimbursement itself is not yet appropriate.

### C. Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, and Declaratory Relief

Sunwest Metals's claims against Star Insurance are based on the insurance contract. Because rescission of a contract renders the contract as if it had never been made, if the Policies are rescinded, the contractual duties alleged by Sunwest Metals must be treated as if they were never owed. Because there is genuine issue of material fact as to Sunwest Metals's defenses against rescission, granting summary judgment on Sunwest Metals's counterclaims is not yet appropriate.

### D. Personal Liability of G.J. Sullivan for Sunwest Metals's Negligence, Equitable Indemnity, and Declaratory Relief Claims Against It

Sunwest Metals's Third-Party Complaint alleges that G.J. Sullivan negligently failed to verify any of the facts that it supplied to Star Insurance as part of Sunwest Metals's insurance application and that G.J. Sullivan also negligently failed to secure insurance for property located more than 100 feet away from the building at Sunwest Metals's place of business, much of which was damaged in the fire. Third-Party Compl. ¶¶ 113-116. G.J. Sullivan argues that, because it acted as the agent of a disclosed principal, Star Insurance, in helping to form the insurance contract between Star Insurance and Sunwest Metals, it cannot be held personally liable for Sunwest Metals's claims against it; only Star Insurance can. Sunwest Metals responds that G.J. Sullivan can be held personally liable despite its role as Star Insurance's agent because G.J. Sullivan acted as a dual agent of both Star Insurance and Sunwest Metals and because G.J. Sullivan held itself out as an expert in the area of scrap metal recycling insurance.

#### 1. Legal Standard

Because insurance agent and brokers act as middlemen between the insurer and the insured, determining what sorts of legal duties the agent or broker owes to the insurer or insured

in any given factual circumstance can be difficult to ascertain. When an applicant or an insured is harmed by the acts or contracts of an insurer's agent, liability to the insured generally falls on the insurer, not the insurer's agent, so long as the agent acted within the scope of his agency and fully disclosed the principal. *Lippert v. Bailey*, 241 Cal. App. 2d 376, 382 (1966); *see also id.* ("Where the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent."). The *Lippert* rule has been criticized for being drawn from narrow principles found in contracts and agency law without considering the general tort law principle that each person generally owes a duty of reasonable care to others and is liable for his or her own torts. *See Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1121 (N.D. Cal. 2002). However, *Lippert* has never been expressly overruled, although California courts have since recognized a number of exceptions to the *Lippert* rule. The insurer's agent can be held personally liable by the applicant or insured when the agent not only represented the insurer but also had an agency relationship with the insured, i.e., was a dual agent. *See Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003). In *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916 (1997), the court recognized three additional exceptions:

> (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided (as in *Free, Desai* and *Nacsa*), (b) there is a request or inquiry by the insured for a particular type or extent of coverage (as in *Westrick*), or (c) the agent assumes an additional duty by either express agreement or by "holding himself out" as having expertise in a given field of insurance being sought by the insured (as in *Kurtz*).

*Id.* at 927. Since only the dual agent and holding out exceptions have been argued by Sunwest Metals, the Court addresses only those two.

### 2.  Analysis

The Court first determines whether the *Lippert* rule applies to G.J. Sullivan, i.e., whether it was Star Insurance's agent with respect to the Policies, whether G.J. Sullivan was acting within the scope of its agency, and whether it was disclosed to Sunwest Metals that G.J. Sullivan was Star Insurance's agent. The first two factors are not contested. As discussed above in Part

I.A.1.c, it is indisputable that the earliest Sunwest Metals could have known that G.J. Sullivan was acting on Star Insurance's behalf was on or around July 8, 2011, when Marlene Priolo of G.J. Sullivan sent Star Insurance's quote to the Dunlaps. As a general rule, an agent's actual knowledge is imputed to its principal. Cal. Civ. Code § 2332. It is also undisputed that Sunwest Metals knew when it renewed its insurance policy in 2012 that the policy was with Star Insurance and that Star Insurance's agent was G.J. Sullivan. Thus, a reasonable jury could only find that Sunwest Metals knew by the time it signed up for the '11-'12 Policy that G.J. Sullivan was Star Insurance's agent. Thus, the *Lippert* rule applies unless there are facts to show that the dual agent or holding out exceptions apply.

"An employee acts as a 'dual agent' by assuming special duties for the benefit of the insured beyond those required by her principal." *Mercado*, 340 F.3d at 826 (citing *Jones v. Grewe,* 189 Cal. App. 3d 950, 954–55 (1987)). "An insurance agent cannot be a 'dual agent' unless he is either an independent broker or has a long-term, special relationship with the insured." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 808 (N.D. Cal. 1998). There is no evidence in this case that Sunwest Metals (or the Dunlap Defendants, Sunwest Metals's agent) had a long-term relationship with G.J. Sullivan. There is some evidence that G.J. Sullivan may be an independent broker. G.J. Sullivan's website describes G.J. Sullivan as a "wholesale insurance broker." Sunwest-Exs. 53, 54 (Dkts. 47-19, 47-20). The California Department of Insurance licensing database reflects that G.J. Sullivan is licensed as a "Reinsurance Intermed Broker," a "Special Lines SL Broker," and a "Surplus Lines Broker." Request for Judicial Notice ("RJN") Ex. 1 (Dkt. 42-3). However, there is no evidence that G.J. Sullivan acted as an insurance broker on Sunwest Metals's behalf rather than or in addition to acting as an insurance agent for Star Insurance.[7] The Producers Agreement signed by Tom Dunlap on May 5, 2011 made clear that G.J. Sullivan was acting as a "General Agent" for some insurance carrier. G.J. Sullivan further disclosed that it was acting as Star Insurance's agent by July 8, 2011 when Ms.

---

[7] California's Insurance Code defines an "insurance broker" as "a person who, for compensation and on behalf of another person, transacts insurance . . . with, but not on behalf of, an admitted insurer." Cal. Ins. Code § 1623. An "insurance agent," by contrast, is "a person who transacts insurance . . . on behalf of an admitted insurance company." Cal. Ins. Code § 1621.

Priolo sent the Dunlaps a quote from Star Insurance. Without some evidence from Sunwest Metals regarding some agency relationship between itself and G.J. Sullivan or at least between the Dunlaps and G.J. Sullivan, a reasonable jury could only conclude that G.J. Sullivan was not a dual agent.

Regarding the holding out exception, Sunwest Metals points out that G.J. Sullivan stated on its website that it "operate[d] as wholesale insurance brokers, providing selected retailer producers across the United States access to programs and quality markets throughout the world." The website also stated that G.J. Sullivan was "dedicated to providing our retail producers the best possible service, professionalism and expertise, based on lasting relationships" and that, "as brokers," G.J. Sullivan "utilize[d] [its] extensive surplus lines market to cover a wide range of special risks" including "specialized coverage for Scrap Metal Recyclers." With regard to Scrap Metal Recycling Insurance, G.J. Sullivan stated that it would "continue to meet the ever changing needs of the scrap metal recycling industry" and that it "closely monitor[ed] the program to meet the industry and the individual state requirements." Sunwest-Exs. 53-54.

The Court is not persuaded that such statements can support a finding that G.J. Sullivan "held itself out" as an expert on scrap metal recycling insurance. In *Kurtz, Richards, Wilson & Co. v. Ins. Communicators Mktg. Corp.*, 12 Cal. App. 4th 1249 (1993), the leading case on the holding out exception, the insurer's agent responded to a specific inquiry by the insured's representative, telling him that the insured's group plan was not subject to Medicare provisions in the Tax Equity and Fiscal Responsibility Act of 1982 and urging him to sign a document stating that the insured did not believe its group plan was subject to those provisions. The insured relied on the agent's representation and signed the document. The insurer later discovered that the statement was inaccurate. The Court denied rescission in part because the agent had assumed a duty to the insured by holding himself out as having specific expertise. *Id.* at 1254-57. Here, in the Court's view, the language on G.J. Sullivan's website does not state or imply that G.J. Sullivan has specialized knowledge that other insurance brokers or agents do not have. It merely assures readers that G.J. Sullivan would offer good professional services. Even if

the language could be read as implying G.J. Sullivan's expertise, there is no evidence that either Sunwest Metals or the Dunlap Defendants actually looked at those statements on G.J. Sullivan's website or that they relied on these statements. Based on these facts, the Court concludes that Sunwest Metals has raised no genuine issue of material fact as to whether G.J Sullivan held itself out as an expert.

In conclusion, the undisputed facts justify applying the *Lippert* rule and Sunwest Metals has not raised any genuine issue of material fact that any exception to the *Lippert* rule should apply instead. Accordingly, the Court GRANTS G.J. Sullivan's Motion for Summary Judgment and holds that, as a matter of law, G.J. Sullivan cannot be held personally liable for Sunwest Metals's claims against it.

### IV. Certification for Interlocutory Appeal

At oral argument on December 22, 2014, Star Insurance made an oral motion for the Court to certify its order for interlocutory appeal on the issue of whether an insurer who has made inquiries can nevertheless waive its right to material information under California Insurance Code § 336 if its inquiry was not reasonable.

### A. Legal Standard

28 U.S.C. § 1292(b) provides a means for litigants to bring an immediate appeal of a non-dispositive order with the consent of both the district court and the court of appeals. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025–26 (9th Cir. 1982). A district court may certify an order for interlocutory appellate review under Section 1292(b) if the following three requirements are met: "(1) there is a controlling question of law, (2) there are substantial grounds for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *Id.* at 1026; 28 U.S.C. § 1292(b).

"Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). Indeed, the legislative history of Section 1292 suggests that it ought to be used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026

(citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)); *Fukuda v. Cnty. of Los Angeles*, 630 F. Supp. 228, 299 (C.D. Cal. 1986) ("The party seeking certification has the burden of showing that exceptional circumstances justify a departure from the 'basic policy of postponing appellate review until after the entry of a final judgment.'") (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

### B. Discussion

The Court denies Star Insurance's 28 U.S.C. § 1292(b) motion because the Court is not persuaded that interlocutory appeal at this stage would materially advance the ultimate termination of the litigation. Where "a substantial amount of litigation remains in th[e] case regardless of the correctness of the Court's ruling . . . arguments that interlocutory appeal would advance the resolution of th[e] litigation are unpersuasive." *Friedman v. 24 Hour Fitness USA, Inc.*, No. 06–cv–6282, 2009 WL 545783, at *2 (C.D. Cal. Mar. 3, 2009); *see also United States ex rel. Bagley v. TRW, Inc.*, No. 95–cv–4153, 2001 WL 369790, at *2 (C.D. Cal. Mar. 26, 2001). Immediate appeal is also not appropriate where "the Court concludes certification would actually delay the resolution of the litigation," *Strauss v. Sheffield Ins. Corp.*, No. 05CV1310-H(CAB), 2006 WL 6158770, at *4 (S.D. Cal. June 23, 2006) (citing *E. Shurance v. Planning Control Int'l*, 839 F.2d 1347, 1348 (9th Cir. 1988)). In *Strauss*, the court refused to certify an interlocutory appeal due to its concern that the final resolution of the interlocutory appeal could take years. *Id.*

Here, trial is set for March 31, 2015. It is highly unlikely that interlocutory appeal would be completed before then. In the meantime, regardless of whether the Court's ruling on the waiver issue is correct, certain claims remain for trial, including Star Insurance's negligence claims against the Dunlap Defendants and Sunwest Metals's claims against the Dunlap Defendants for negligence, breach of fiduciary duty, breach of contract, equitable indemnity, and declaratory relief. The Court accordingly finds that immediate appeal would not materially advance the ultimate termination of the litigation.

### V. Disposition

For the reasons discussed above, the Court:

(1) GRANTS IN PART AND DENIES IN PART Star Insurance's Motion as follows:

    a. Star Insurance has satisfied its burden of proving that the Dunlap Defendants' statements were material misrepresentations. Unintentional misrepresentations during the insurance application process suffice to justify rescission.

    b. There is a genuine issue of material fact as to whether Star Insurance was put on inquiry notice that the Dunlap Defendants' statements were inaccurate and whether Star Insurance's level of inquiry was reasonable, facts which determine whether Star Insurance's right to rescission has been waived through its failure to conduct a reasonable inquiry.

    c. If Sunwest Metals loses on its defenses, Star Insurance is entitled to be reimbursed $138, 976.23 and dismissal of Sunwest Metals's counterclaims against it.

(2) DENIES Sunwest Metals's Motion.

(3) GRANTS G.J. Sullivan's Motion. Sunwest Metals's claims against G.J. Sullivan for negligence, equitable indemnity, and declaratory relief are dismissed with prejudice.

(4) DENIES Star Insurance's 28 U.S.C. § 1292(b) motion.


DATED:    December 29, 2014


*David O. Carter*
_____

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE