1   LAWRENCE BORYS (SBN 60625)
    LBORYS@RMKB.COM
2   MICHAEL OHIRA (SBN126137)
    MOHIRA@RMKB.COM
3   JAMIE M. KURTZ (SBN255271)
    JKURTZ@RMKB.COM
4   ROPERS, MAJESKI, KOHN & BENTLEY
    445 S. Figueroa Street, Suite 3000
5   Los Angeles, CA  90071-1619
    Telephone:  (213) 312-2000
6   Facsimile:   (213) 312-2001

7   Attorneys for Defendants and Third Party
    Defendants THOMAS DUNLAP
8   INSURANCE AGENCY LLC; DEAN T.
    DUNLAP; THOMAS R. DUNLAP

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  STAR INSURANCE COMPANY, a        CASE NO.  SACV13-1930 DOC (DFMx)
    Michigan corporation,
13                                   **TRIAL DATE: MARCH 31, 2015**
                     Plaintiff,      **TIME:  8:30 A.M.**
14                                   **CTRM: 6A**
            v.
15                                   **DEFENDANTS AND THIRD-PARTY**
    SUNWEST METALS, INC., a          **DEFENDANTS THOMAS DUNLAP**
16  California corporation,          **INSURANCE AGENCY, LLC,**
                                     **THOMAS DUNLAP, AND DEAN**
17                   Defendant.      **DUNLAP'S MEMORANDUM OF**
                                     **CONTENTIONS OF FACT AND LAW**
18
                                     Pre-Trial Conf.:  March 16, 2015
19                                   Complaint Filed:  December 12, 2013
                                     3rd Party Cmp.    February 6, 2014
20

21

22  AND RELATED COUNTER-
    ACTIONS, AND THIRD-PARTY
23  COMPLAINT.

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    CLAIMS AND DEFENSES L.R. 16-4.1 ................................................ 1

       A.     STAR'S CLAIMS AND ELEMENTS ........................................... 1

              1.     Summary of Star's Claims [L.R. 14-4.1(a),(b)] ........................ 1

              2.     Key Evidence in Opposition to Star's Claim of Negligent
                     Misrepresentation ..................................................................... 2

              3.     Summary of Dunlap's Affirmative Defenses [L.R. 16-
                     4.1(d), (e)] ................................................................................ 3

                     a.     Affirmative Defense – Comparative Fault ...................... 3

                     b.     Affirmative Defense – Assumption of Risk .................... 4

                     c.     Affirmative Defense – Waiver ........................................ 4

                     d.     Affirmative Defense – Estoppel ..................................... 4

                     e.     Affirmative Defense – Failure to State a Claim ............. 5

                     f.     Affirmative Defense – Failure to Mitigate Damages ....... 5

                     g.     Affirmative Defense – Statute of Limitations ................. 6

                     h.     Affirmative Defense – Laches ........................................ 6

                     i.     Affirmative Defense – Unclean Hands ........................... 7

                     j.     Affirmative Defense – Lack of Standing ........................ 7

                     k.     Affirmative Defense – In Pari Delicto ............................ 8

                     l.     Affirmative Defense – Agent of Third-Party .................. 8

                     m.     Affirmative Defense – Ratification ................................. 8

                     n.     Affirmative Defense – Superseding and Intervening
                            Acts ................................................................................ 9

                     o.     Affirmative Defense – Statute of Frauds ........................ 9

                     p.     Affirmative Defense – Duty ........................................... 10

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

1

**TABLE OF CONTENTS**
**(continued)**

Page

4.   Key Evidence in Support of Dunlap's Affirmative
Defenses to Star's First Amended Complaint [L.R. 14-
4(f)] ................................................................................. 10

a.   First Affirmative Defense of Comparative Fault ........... 10

b.   Second Affirmative Defense of Assumption of Risk .... 11

c.   Third Affirmative Defense of Waiver ........................... 12

d.   Fourth Affirmative Defense of Estoppel ....................... 13

e.   Fifth Affirmative Defense of Failure to State a
Claim ............................................................................. 14

f.   Sixth Affirmative Defense of Failure to Mitigate
Damages ........................................................................ 16

g.   Seventh Affirmative Defense of The Statute of
Limitations .................................................................... 17

h.   Eighth Affirmative Defense of Laches ......................... 17

i.   Ninth Affirmative Defense of Unclean Hands .............. 18

j.   Tenth Affirmative Defense of Lack of Standing ........... 18

k.   Eleventh Affirmative Defense of In Pari Delicto .......... 20

l.   Twelfth Affirmative Defense of Agent of Third-
Party .............................................................................. 21

m.   Thirteenth Affirmative Defense of Ratification ............. 21

n.   Fourteenth Affirmative Defense of Superseding and
Intervening Acts ............................................................ 21

o.   Fifteenth Affirmative Defense of Statute of Frauds ...... 22

p.   Sixteenth Affirmative Defense of Duty ........................ 22

B.   SUNWEST'S CLAIMS AND ELEMENTS ................................. 23

1.   Summary of Sunwest's Claims [L.R. 14-4.1(a),(b)] ............... 23

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- ii -

**DUNLAP'S MEMORANDUM OF**
**CONTENTIONS OF FACT AND LAW**

1
2

**TABLE OF CONTENTS**
**(continued)**

Page

3
4
    2.    Summary of Dunlap's Affirmative Defenses [L.R. 16-4.1(d), (e)]...................................................................... 26

5
        a.    Affirmative Defense – Comparative Fault.................... 26

6
        b.    Affirmative Defense – Assumption of Risk................. 26

7
        c.    Affirmative Defense – Waiver ..................................... 27

8
        d.    Affirmative Defense – Estoppel................................... 27

9
10
        e.    Affirmative Defense – Failure to State a Claim – First Claim................................................................... 28

11
12
        f.    Affirmative Defense – Failure to State a Claim – Second Claim................................................................ 28

13
        g.    Affirmative Defense – Failure to State a Claim – Third Claim................................................................... 28

14
15
        h.    Affirmative Defense – Failure to State a Claim – Fourth Claim ............................................................... 28

16
17
        i.    Affirmative Defense – Failure to State a Claim – Fifth Claim ................................................................... 29

18
19
        j.    Affirmative Defense – Failure to State a Claim – Sixth Claim................................................................... 29

20
        k.    Affirmative Defense – Failure to State a Claim – Seventh Claim.............................................................. 29

21
22
        l.    Affirmative Defense – Failure to Mitigate Damages..... 30

        m.    Affirmative Defense – Statute of Limitations................ 30

23
24
        n.    Affirmative Defense – Laches ..................................... 30

25
        o.    Affirmative Defense – Unclean Hands .......................... 31

26
        p.    Affirmative Defense – Lack of Standing ...................... 31

27
        q.    Affirmative Defense – In Pari Delicto .......................... 31

28
        r.    Affirmative Defense – Ratification............................... 32

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

1
2

# TABLE OF CONTENTS
## (continued)

Page

3
4

s.      Affirmative Defense – Superseding and Intervening
        Acts.................................................................................. 32

5

t.      Affirmative Defense – Statute of Frauds ........................ 33

6
7

3.      Key Evidence in Support of Dunlap's Affirmative
        Defenses to Sunwest's Third-Party Complaint [L.R. 14-
        4(f)]................................................................................... 33

8
9

a.      First Affirmative Defense of Comparative Fault........... 33

10

b.      Second Affirmative Defense of Assumption of Risk .... 33

11

c.      Third Affirmative Defense of Waiver............................ 34

12

d.      Fourth Affirmative Defense of Estoppel....................... 34

13

e.      Fifth Affirmative Defense of Failure to State a
        Claim – First Claim ....................................................... 35

14
15

f.      Sixth Affirmative Defense of Failure to State a
        Claim – Second Claim ................................................... 35

16
17

g.      Seventh Affirmative Defense of Failure to State a
        Claim – Third Claim ...................................................... 36

18
19

h.      Eighth Affirmative Defense of Failure to State a
        Claim – Fifth Claim ....................................................... 36

20

i.      Ninth Affirmative Defense of Failure to State a
        Claim – Sixth Claim....................................................... 37

21
22

j.      Tenth Affirmative Defense of Failure to State a
        Claim – Seven Claim ..................................................... 37

23
24

k.      Eleventh Affirmative Defense of Failure to
        Mitigate Damages .......................................................... 38

25
26

l.      Twelfth Affirmative Defense of The Statute of
        Limitations ..................................................................... 38

27

m.      Thirteenth Affirmative Defense of Laches ................... 38

28

n.      Fourteenth Affirmative Defense of Unclean Hands ...... 39

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- iv -

**TABLE OF CONTENTS**
**(continued)**

Page

      o.    Fifteenth Affirmative Defense of Lack of Standing ...... 39

      p.    Sixteenth Affirmative Defense of In Pari Delicto.......... 40

      q.    Eighteenth Affirmative Defense of Ratification ............ 40

      r.    Nineteenth Affirmative Defense of Superseding
          and Intervening Acts ....................................... 41

      s.    Twentieth Affirmative Defense of Statute of Frauds..... 41

III.    ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(H)] ..................... 42

IV.    IDENTIFICATION OF ISSUES OF LAW [L.R. 16-4.1(I) ......................... 42

V.    BIFURCATION OF ISSUES [L.R. 16-4.3] ................................................ 43

VI.    JURY TRIAL [L.R. 16-4.4] .................................................................... 43

    A.    Issues Triable to the Jury ....................................................... 43

VII.    ISSUES TRIABLE TO THE COURT .................................................... 43

VIII.    ATTORNEYS FEES [L.R. 16-4.5] ......................................................... 43

IX.    ABANDONMENT OF ISSUES [L.R. 16-4.6]........................................... 44

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**DUNLAP'S MEMORANDUM OF**
**CONTENTIONS OF FACT AND LAW**

1

# TABLE OF AUTHORITIES

2

Page

3

**FEDERAL CASES**

4

A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,

5

    960 F.2d 1020 (Fed. Cir. 1992)....................................................................6, 31

6

**OTHER CASES**

7

Akins v. County of Sonoma,

8

    67 Cal. 2d 185 (1967) ....................................................................................9, 32

9

Brewer v. Teano,

10

    40 Cal. App. 4th 1024 (1995) .......................................................................9, 32

11

Century Sur. Co. v. Crosby Ins., Inc.,

    124 Cal. App. 4th 116 (2004) .............................................................................7

12

Driscoll v. City of Los Angeles,

13

    67 Cal. 2d 297 (1967) ....................................................................................5, 27

14

Fibreboard Paper Products Corp. v. East Bay Union of Machinists,

15

    227 Cal. App. 2d 675 (1964).........................................................................7, 31

16

Fitzpatrick v. Hayes,

17

    57 Cal. App. 4th 916 (1997)..............................................................................31

18

Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assoc., Inc.

19

    115 Cal. App. 4th 1145 (2004) .........................................................................31

20

In re Marriage of Valle,

21

    53 Cal. App. 3d 837 (1975)..........................................................................5, 27

22

Johnson v. City of Loma Linda,

    24 Cal. 4th 61 (2000) ....................................................................................6, 30

23

24

Jones v. Grewe,

    189 Cal. App. 3d 950 (1971)............................................................................31

25

Kotlar v. Hartford Fire Ins. Co.,

26

    83 Cal. App. 4th 1116 (2000) ...........................................................................31

27

Lippert v. Bailey,

28

    241 Cal. App. 2d 376 (1966)....................................................................7, 8, 10

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**TABLE OF AUTHORITIES**
**(continued)**

Page

Magic Kitchen LLC v. Good Things Int'l,
  153 Cal. App. 4th 1144 (2007)................................................6, 30

Mailand v. Burckle,
  20 Cal. 3d 367 (1978) ................................................8, 32

Mark Tanner Constr. v. HUB Internat. Ins. Servs.,
  224 Cal. App. 4th 574 (2014) ................................................31

Safway Steel Products, Inc. v. Lefever,
  117 Cal. App. 2d 489 (1953) ................................................5, 27

Simank Realty, Inc. v. DeMarco,
  6 Cal. App. 3d 610 (1970) ................................................5, 27

Unilogic, Inc. v. Burroughs Corp.
  10 Cal. App. 4th 612 (1992) ................................................7, 31

**OTHER STATUTES**

California Civil Code § 2307, 2310 ................................................9, 32

California Civil Code § 1624 (a)(2) ................................................10, 33

California Code of Civil Procedure § 338 and 339 ................................................6, 30

California Code of Civil Procedure § 430.10. ................................................5, 28, 29, 30

California Code of Civil Procedure § 1060 ................................................26

California Ins. Code § 31 & 33 ................................................7, 8, 10

**RULES**

L.R. 14-4.1(a),(b) ................................................1, 23

L.R. 14-4(f) ................................................10, 33

L.R. 16-4.1 ................................................1

L.R. 16-4.1(I) ................................................42

L.R. 16-4.1(d), (e) ................................................3, 26

DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (continued)

**Page**

L.R. 16-4.1(H) ....................................................................................41

L.R. 16-4.3 .........................................................................................42

L.R. 16-4.4 .........................................................................................43

L.R. 16-4.5 .........................................................................................43

L.R. 16-4.6 .........................................................................................43

**OTHER AUTHORITIES**

CACI 305, VF-300 ..............................................................................25

CACI 336 .........................................................................................4, 27

CACI 400, 600 ....................................................................................24

CACI 405 .........................................................................................3, 26

CACI 408, 451, 2330 .......................................................................4, 26

CACI 432 .........................................................................................9, 32

CACI 3710 ......................................................................................9, 32

CACI 3800 ..........................................................................................25

CACI 3930 .......................................................................................5, 30

CACI 4101 ..........................................................................................24

**DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

## I.   INTRODUCTION

Third Party Plaintiff, Sunwest Metals, Inc., a recycling collection center (Sunwest) was the victim of an arson fire and made a claim under its fire insurance policy with Star Insurance Company (Star).  Star began a claim investigation and made one, partial, payment for clean-up costs then initiated the instant litigation by filing a Complaint to *rescind* the insurance policy. Star maintains it did not know and could not have known that Sunwest collected more paper than what Star's underwriting guidelines specified.

Sunwest responded to Star's lawsuit by filing a counterclaim for breach of contract, insurance "bad faith," and declaratory relief.  Sunwest also filed a third-party complaint against their insurance broker, the Thomas Dunlap Insurance Agency, LLC, and the agency's two principals, Thomas Dunlap and Dean Dunlap (Dunlap), for alleged negligence, breach of fiduciary duty, breach of contract, equitable indemnity, and declaratory relief.  The Third-Party Complaint also named Star's managing general agent, G.J. Sullivan Co. Excess & Surplus Lines Brokers (Sullivan), however Sullivan's motion for summary judgment was granted on December 29, 2014 and is no longer in the case. [Dkt. No. 56].  The Court granted the motion because Star was a disclosed principal of Sullivan.

Star thereafter filed a First Amended Complaint to add a claim for negligent misrepresentation against Dunlap.

## II.   CLAIMS AND DEFENSES L.R. 16-4.1

### A.   STAR'S CLAIMS AND ELEMENTS

#### 1.   Summary of Star's Claims [L.R. 14-4.1(a),(b)]

**Claim: Negligent Misrepresentation.**

Summary: Star's First Amended Complaint alleges a single claim against Dunlap, for negligent misrepresentation.  Star alleges that the insurance applications for the two policies issued by Star misrepresented the amount of

**DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

revenue Sunwest derived from the sale of paper and plastic and, specifically, that the amount of such revenue was more than 15% of Sunwest's total reported annual income. [Dkt. 34, page 10, lines 3-13]. G.J. Sullivan, the managing general agent for Star, was involved in underwriting (evaluating) Sunwest's insurance application. Sullivan thereafter referred the applications to Star corporate underwriters. Star maintains that the applications contained material misrepresentations, that the misrepresentations were made by Dunlap, and that Dunlap must reimburse Star for any amounts that Star must pay to Sunwest if Sunwest prevails on its counterclaim for breach of contract and "bad faith" by Star, and to reimburse Star the attorney's fees and costs incurred by Star in defending against Sunwest's Third-Party Complaint.  [Dkt. 34, page 11, lines 18-19].

Elements: Star has the burden of proving that: (1) Dunlap represented to Star that a fact was true; (2) Dunlap's representation was not true; (3) Dunlap had no reasonable grounds for believing the representation was true when made; (4) Dunlap intended that Star rely on this representation; (5) Star reasonably relied on Dunlap's representation; (6) Star was harmed; and (7) Star's reliance on Dunlap's representation was a substantial factor in causing its harm.

Source: California Civil Jury Instructions (CACI) 1903.

### 2.   Key Evidence in Opposition to Star's Claim of Negligent Misrepresentation.

Dunlap will introduce the following categories of evidence establishing that Dunlap is not liable for negligent misrepresentation:

- Testimony that the information on the insurance application was obtained from Sunwest.

- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, on the amount of paper or plastic an insurance customer could handle and still qualify for the insurance program, was proprietary to Star and never disclosed to Dunlap.

- Testimony and documentary evidence that Dunlap made no representation to Star regarding the percentage of annual sales revenue Sunwest derived from the sale of paper and plastic.

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, by virtue of the fact that Star was aware of its own guidelines, saw Sunwest's website, , saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire), which showed that Sunwest handled more than minimal amount of paper and plastic.  One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy until after the fire, after engaging in post-claim underwriting, and after Star was confronted with a claim for insurance benefits.

- Testimony that Dunlap did not know that representations in the insurance application regarding the amount of paper and plastic handled by Sunwest, were false.

3.      **Summary of Dunlap's Affirmative Defenses [L.R. 16-4.1(d), (e)]**

a.      **Affirmative Defense – Comparative Fault.**

<u>Summary</u>:  Dunlap contends that any injury, damage or loss, if any, sustained by Star was proximately caused, and contributed-to, by fault on Star's part and that

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  Star did not exercise ordinary care in its own behalf at the times and places set forth

2  in the First Amended Complaint.  [Dkt. 37 page 4, lines 19-24]

3      Elements: Dunlap has the burden of establishing that Star was negligent and

4  that Star's negligence was a substantial factor in causing its harm.

5      Source: CACI 405.

6          **b.      Affirmative Defense – Assumption of Risk.**

7      Summary:  Dunlap contends that any damages, injuries or losses suffered by

8  Star herein were caused by risks which Star was well aware of and which Star

9  voluntarily assumed unto itself.

10     Elements:  Dunlap has the burden of establishing that Star knew of the risk

11 inherent in issuing policies of insurance and of quoting or binding insurance

12 coverage without confirming representations on the insurance application regarding

13 information Star believed was material, but assumed such risks.

14     Source: CACI 408, 451, 2330,

15         **c.      Affirmative Defense – Waiver.**

16     Summary:  Dunlap contends that Star, during the course of the activities

17 described in the First Amended Complaint, and by acts, errors and omissions on its

18 own part, waived the right to claim damage or injury caused by an act or omission

19 of Dunlap.

20     Elements:  Dunlap has the burden of proving that Star knew of its

21 responsibility to exercise diligence and prudence in underwriting the fire insurance

22 policy it issued to Sunwest, but that Star freely and knowingly gave up its right to

23 determine before issuing insurance policies if the amount of paper and plastic

24 handled by Sunwest constituted more than 15% of Sunwest's annual income.

25     Source: CACI 336.

26         **d.      Affirmative Defense – Estoppel.**

27     Summary:  Dunlap contends that by virtue of certain acts, errors and

28 omissions committed or omitted by Star, Star is estopped from claiming any

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- 4 -                **DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

damage or injury by virtue of any acts of Dunlap.

Elements:  Dunlap has the burden of proving that Star possessed information that the level of paper and plastic handled by Sunwest was greater than what was represented on the applications; that Star, by quoting and binding coverage to Sunwest must have intended that its conduct would be acted upon or that Dunlap had a right to believe that issuance of the insurance policy was intended; that Dunlap was ignorant of the true state of facts of whether Sunwest derived more than 15% of its annual income from the sale of paper and/or plastic; and that Dunlap relied on Star's act of quoting, binding, and issuing coverage to Sunwest.

Source: Driscoll v. City of Los Angeles, 67 Cal. 2d 297, 305 (1967); Simank Realty, Inc. v. DeMarco, 6 Cal. App. 3d 610, 616 (1970); Safway Steel Products, Inc. v. Lefever, 117 Cal. App. 2d 489, 491 (1953); In re Marriage of Valle, 53 Cal. App. 3d 837 (1975).

### e.    Affirmative Defense – Failure to State a Claim.

Summary:  Dunlap contends that the First Amended Complaint and the fourth claim for negligent misrepresentation against Dunlap, fails to state facts sufficient to constitute any claim or cause of action upon which relief can be granted.

Elements:  Dunlap has the burden of proving that the First Amended Complaint does not state facts sufficient to constitute a cause of action by Star against Dunlap.

Source: California Code of Civil Procedure §430.10, et seq.

### f.    Affirmative Defense – Failure to Mitigate Damages.

Summary:  Dunlap contends that Star failed to reasonably mitigate damages and, as a result, any injuries or damages contended to of been suffered by Star should be reduced accordingly.

Elements:  Dunlap has the burden of proving that if Dunlap is found responsible for the original harm claim by Star, then Dunlap must prove that Star

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  could have avoided some or all of the claimed damages through reasonable efforts

2  or expenditures.

3      <u>Source</u>: CACI 3930.

4          **g.**     **Affirmative Defense – Statute of Limitations.**

5      <u>Summary</u>:  Dunlap contends that the fourth claim for negligent

6  misrepresentation is barred by virtue of the statute of limitations found in California

7  Code of Civil Procedure section 338 and 339.

8      <u>Elements</u>:  Dunlap has the burden of proving that Star commenced its fourth

9  claim for negligent misrepresentation against Dunlap more than two years after Star

10  knew or should have known of it claim against Dunlap for negligent

11  misrepresentation.

12      <u>Source</u>: California Code of Civil Procedure §339.

13          **h.**     **Affirmative Defense – Laches.**

14      <u>Summary</u>:  Dunlap contends that by reason of laches on the part of Star, Star

15  cannot properly maintain its claim for negligent misrepresentation.

16      <u>Elements</u>:  Dunlap has the burden of proving that Star unreasonably and

17  inexcusably delayed bringing its action for rescission and that either the delay

18  caused prejudice to Dunlap, or that Star acquiesced to the conduct about which it

19  complains.  The period of delay is measured from the time that the plaintiff knew or

20  reasonably should have known of the alleged activities on which plaintiff bases its

21  claims. In deciding whether Star "should have known" of the claims it is now

22  making, consideration is to be given to whether Star had knowledge of

23  circumstances that would have made a reasonable person in Star's position

24  suspicious of the acts and conduct of defendant; and whether inquiring into those

25  circumstances would have led to knowledge of the essential facts giving rise to

26  Star's claim.

27      <u>Source</u>: <u>Magic Kitchen LLC v. Good Things Int'l</u>, 153 Cal. App. 4th 1144,

28  1157-58 (2007); <u>Johnson v. City of Loma Linda</u>, 24 Cal. 4th 61, 68 (2000); and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  <u>A.C. Aukerman Co. v. R.L. Chaides Constr. Co.</u>, 960 F.2d 1020, 1033 (Fed. Cir.
2  1992).

3              **i.       Affirmative Defense – Unclean Hands.**

4       <u>Summary</u>:  Dunlap contends that Star's claims, and each of them, are barred
5  by the doctrine of unclean hands.

6       <u>Elements</u>:  Dunlap has the burden of proving that Star, from reviewing
7  Sunwest's website, and Star's receipt of reports of inspections of the Sunwest
8  premises, was aware that the amount of paper and/or plastic handled by Sunwest
9  was more than minimal; that information received from Dunlap was unsatisfactory
10 to Star; that Star's corporate underwriter directed its managing general agent to
11 independently confirm whether the amount of paper and plastic handled by Sunwest
12 was minimal; that Star did not obtain such confirmation and acquiesced to the
13 representations of which it now complains, until after Sunwest had suffered a fire
14 loss and made an insurance claim to Star.

15      <u>Source</u>:  <u>Fibreboard Paper Products Corp. v. East Bay Union of Machinists</u>,
16 227 Cal. App. 2d 675 (1964); <u>Unilogic, Inc. v. Burroughs Corp.</u> 10 Cal. App. 4th
17 612, 619-620 (1992).

18             **j.       Affirmative Defense – Lack of Standing.**

19      <u>Summary</u>:  Dunlap contends that Star lacks standing to pursue the fourth
20 claim for negligent misrepresentation against Dunlap.

21      <u>Elements</u>:  Dunlap has the burden of proving that at all times mentioned in
22 the First Amended Complaint Dunlap was an insurance broker on behalf of
23 Sunwest; that the insurance at issue was not for life, disability, or health; and that
24 Sunwest was Dunlap's disclosed principal.  Dunlap can also establish that Star has
25 no standing to pursue its claim for negligent misrepresentation by demonstrating
26 that Dunlap made no intentional misrepresentation and did not know that Star
27 would have rejected Sunwest's application had Star known that more than 15% of
28 Sunwest's income was derived from the sale of paper or plastic.

**DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    Source: California Ins. Code §31 & 33; <u>Lippert v. Bailey</u>, 241 Cal. App. 2d

2    376, 382 (1966); <u>Century Sur. Co. v. Crosby Ins., Inc.,</u> (2004) 124 Cal. App. 4th

3    116.

4    ### k.    Affirmative Defense – In Pari Delicto.

5    <u>Summary</u>:  Dunlap contends that Star is itself actively and affirmatively at

6    fault, either fully or partially, for the matters alleged in the First Amended

7    Complaint and was the in pari delicto and as a result thereof may not maintain the

8    present action against Dunlap.

9    <u>Elements</u>:  Dunlap has the burden of proving that Star is at least equally

10   responsible for determining whether the amount of paper and/or plastic handled by

11   Sunwest was more than minimal; that Star caused the circumstance of which Star

12   complains -- issuing insurance to an insured whose operations exceeded Star's

13   underwriting guidelines; and that Star had no compelling economic pressures that

14   prevented Star from confirming whether the amount of paper and plastic handled by

15   Sunwest was within Star's underwriting guidelines.

16   Source: CACI; *Mailand v. Burckle*, 20 Cal. 3d 367 (1978).

17   ### l.    Affirmative Defense – Agent of Third-Party.

18   <u>Summary</u>:  Dunlap contends that it was, at all times mentioned in the First

19   Amended Complaint acting as an agent for a disclosed principal and by virtue

20   thereof Star is not entitled to relief as requested against Dunlap.

21   <u>Elements</u>: Dunlap has the burden of proving that at all times mentioned in the

22   First Amended Complaint Dunlap was an insurance broker on behalf of Sunwest;

23   that the insurance at issue was not for life, disability, or health; and that Sunwest

24   was Dunlap's disclosed principal.

25   Source: California Ins. Code §31 & 33; <u>Lippert v. Bailey</u>, 241 Cal. App. 2d

26   376, 382 (1966).

27   ### m.    Affirmative Defense – Ratification.

28   <u>Summary</u>:  Dunlap contends that Star approved and ratified the conduct

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

attributed to Dunlap and by virtue thereof is barred from recovery.

Elements:  Dunlap has the burden of proving that Star was aware that the representations on the insurance application regarding the amount of paper and/or plastic handled by Sunwest did not jibe with what appeared on Sunwest's website and reported in inspection reports, but nonetheless approved and ratified the representations.

Source: CACI 3710 California Civil Code §2307, 2310.

### n.   Affirmative Defense – Superseding and Intervening Acts.

Summary:  Dunlap contends that the damages sought by Star were proximately caused or contributed to by acts or omissions of others, and that these acts were and intervening and superseding causes that bar Star from recovering against Dunlap.

Elements:  Dunlap has the burden of proving that Star's harm was caused by later misconduct by Star's managing general agent, G.J. Sullivan; Pacific Inspections; Sunwest, or others.  Dunlap must prove that the conduct of such other parties occurred after the conduct of Dunlap; that a reasonable person would consider the conduct of such other parties to be a highly unusual or extraordinary response to the situation; that Dunlap did not know and had no reason to expect that the other parties would act in a negligent or wrongful manner; and that the kind of harm resulting from the conduct of such other parties was different from the harm reasonably expected from Dunlap's conduct.

Source: CACI 432; Akins v. County of Sonoma, 67 Cal. 2d 185, 199 (1967); Brewer v. Teano, 40 Cal. App. 4th 1024 (1995).

### o.   Affirmative Defense – Statute of Frauds.

Summary:  Dunlap contends that to the extent Star's claims are based upon a contract, such claims are barred by the statute of frauds because the First Amended Complaint lacks a written contract requiring performance required by the Statute of

**DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Frauds.

Elements:  If Star maintains that its claim against Dunlap for indemnity is based upon a contract, then Dunlap must prove that the Star's claim for indemnity is a matter subject to the statute of frauds.

Source: California Civil Code §1624(a)(2).

### p.    Affirmative Defense – Duty.

Summary:  Dunlap contends that it does not owe Star the duty on which Star's First Amended Complaint is based.

Elements:  Dunlap must prove that during all times mentioned in the First Amended Complaint Dunlap was acting as an Insurance broker on behalf of Sunwest for insurance other than life, disability, or health, and that Sunwest was a disclosed principal.

Source: California Ins. Code §31 & 33; Lippert v. Bailey, 241 Cal. App. 2d 376, 382 (1966).

### 4.    Key Evidence in Support of Dunlap's Affirmative Defenses to Star's First Amended Complaint [L.R. 14-4(f)].

### a.    First Affirmative Defense of Comparative Fault.

Dunlap will introduce the following categories of evidence in support of its first affirmative defense.

- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, regarding the amount of paper or plastic an insurance customer could handle and still qualify for the insurance program, was proprietary to Star and never disclosed to Dunlap.

- Testimony and documentary evidence that Dunlap made no representation to Star regarding the percentage of annual sales revenue that Sunwest derived from the sale of paper and plastic.

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**DUNLAP'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, because Star was aware of its guidelines, saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire). One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic. Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy before the fire, but engaged in post-claim underwriting after the fire and when Star was confronted with a contractual obligation to pay.

- Testimony that no intentional or fraudulent misrepresentations were made by the Dunlap parties to Star Insurance regarding the amount of paper and plastic handled by Sunwest.

- Testimony that Dunlap was an insurance broker for Sunwest and Sunwest's disclosed principal.

### b. Second Affirmative Defense of Assumption of Risk.

Dunlap will introduce the following categories of evidence in support of its second affirmative defense.

- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, regarding the amount of paper or plastic an insurance customer could handle and still qualify for the insurance program, was proprietary to Star and never disclosed to Dunlap.

- Testimony and documentary evidence that Dunlap made no representation to Star regarding the percentage of annual sales revenue that Sunwest derived from the sale of paper and plastic.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, because Star was aware of its guidelines, saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire).  One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy before the fire, but engaged in post-claim underwriting after the fire and when Star was confronted with a contractual obligation to pay.

- Testimony that no intentional or fraudulent misrepresentations were made by the Dunlap parties to Star Insurance regarding the amount of paper and plastic handled by Sunwest.

- Testimony that Dunlap was an insurance broker for Sunwest and Sunwest's disclosed principal.

### c.    Third Affirmative Defense of Waiver.

Dunlap will introduce the following categories of evidence in support of its third affirmative defense.

- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, regarding the amount of paper or plastic an insurance customer could handle and still qualify for the insurance program, was proprietary to Star and never disclosed to Dunlap.

- Testimony and documentary evidence that Dunlap made no

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

representation to Star regarding the percentage of annual sales revenue that Sunwest derived from the sale of paper and plastic.

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, because Star was aware of its guidelines, saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire).  One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy before the fire, but engaged in post-claim underwriting after the fire and when Star was confronted with a contractual obligation to pay.

- Testimony that no intentional or fraudulent misrepresentations were made by the Dunlap parties to Star Insurance regarding the amount of paper and plastic handled by Sunwest.

- Testimony that Dunlap was an insurance broker for Sunwest and Sunwest's disclosed principal.

### d.    Fourth Affirmative Defense of Estoppel.

Dunlap will introduce the following categories of evidence in support of its fourth affirmative defense.

- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, regarding the amount of paper or plastic an insurance customer could handle and still qualify for the insurance

program, was proprietary to Star and never disclosed to Dunlap.

- Testimony and documentary evidence that Dunlap made no representation to Star regarding the percentage of annual sales revenue that Sunwest derived from the sale of paper and plastic.

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, because Star was aware of its guidelines, saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire).  One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy before the fire, but engaged in post-claim underwriting after the fire and when Star was confronted with a contractual obligation to pay.

- Testimony that no intentional or fraudulent misrepresentations were made by the Dunlap parties to Star Insurance regarding the amount of paper and plastic handled by Sunwest.

- Testimony that Dunlap was an insurance broker for Sunwest and Sunwest's disclosed principal.

    e.    **Fifth Affirmative Defense of Failure to State a Claim.**

Dunlap will introduce the following categories of evidence in support of its fifth affirmative defense.

- Testimony that the information on the insurance application was

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

obtained from Sunwest.

- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, regarding the amount of paper or plastic an insurance customer could handle and still qualify for the insurance program, was proprietary to Star and never disclosed to Dunlap.

- Testimony and documentary evidence that Dunlap made no representation to Star regarding the percentage of annual sales revenue that Sunwest derived from the sale of paper and plastic.

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, because Star was aware of its guidelines, saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire).  One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy before the fire, but engaged in post-claim underwriting after the fire and when Star was confronted with a contractual obligation to pay.

- Testimony that no intentional or fraudulent misrepresentations were made by the Dunlap parties to Star Insurance regarding the amount of paper and plastic handled by Sunwest.

- Testimony that Dunlap was an insurance broker for Sunwest and Sunwest's disclosed principal.

- 15 -

**DUNLAP'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

### f.  Sixth Affirmative Defense of Failure to Mitigate Damages.

Dunlap will introduce the following categories of evidence in support of its sixth affirmative defense.

- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, regarding the amount of paper or plastic an insurance customer could handle and still qualify for the insurance program, was proprietary to Star and never disclosed to Dunlap.

- Testimony and documentary evidence that Dunlap made no representation to Star regarding the percentage of annual sales revenue that Sunwest derived from the sale of paper and plastic.

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, because Star was aware of its guidelines, saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire).  One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy before the fire, but engaged in post-claim underwriting after the fire and when Star was confronted with a contractual obligation to pay.

- Testimony that no intentional or fraudulent misrepresentations were made by the Dunlap parties to Star Insurance regarding the amount of

paper and plastic handled by Sunwest.

- Testimony that Dunlap was an insurance broker for Sunwest and Sunwest's disclosed principal.

- Testimony and documents that Star took no action to rescind the policy until after Sunwest had suffered an arson fire and had made a claim for contract benefits.

      g.    **Seventh Affirmative Defense of The Statute of Limitations.**

Dunlap will introduce the following categories of evidence in support of its seventh affirmative defense.

- Testimony and documentary evidence that Star's corporate underwriters, Michelle LeMoine and Bob King requested more information and an inspection to confirm that the amount of paper and/or plastic handled by Sunwest was minimal and that, by February 2012, Star had three inspection reports of the Sunwest facilities, with each report indicating the presence of more than minimal amounts of paper and plastic, and with one report estimating that 40% of Sunwest's operations involved paper and/or plastic. Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities and an inspection commissioned by Star in September 2011, yet Star did not act to rescind, cancel, or non-renew the insurance policy until more than three years had passed.

      h.    **Eighth Affirmative Defense of Laches.**

Dunlap will introduce the following categories of evidence in support of its eighth affirmative defense.

- Testimony and documentary evidence that Star's corporate underwriters, Michelle LeMoine and Bob King requested more information and an inspection to confirm that the amount of paper

and/or plastic handled by Sunwest was minimal and that, by February 2012, Star had three inspection reports of the Sunwest facilities, with each report indicating the presence of more than minimal amounts of paper and plastic, and with one report estimating that 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities and an inspection commissioned by Star in September 2011, yet Star did not act to rescind, cancel, or non-renew the insurance policy until more than three years had passed.

> **i.       Ninth Affirmative Defense of Unclean Hands.**

Dunlap will introduce the following categories of evidence in support of its ninth affirmative defense.

- Testimony and documentary evidence that Star's corporate underwriters, Michelle LeMoine and Bob King requested more information and an inspection to confirm that the amount of paper and/or plastic handled by Sunwest was minimal and that, by February 2012, Star had three inspection reports of the Sunwest facilities, with each report indicating the presence of more than minimal amounts of paper and plastic, and with one report estimating that 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities and an inspection commissioned by Star in September 2011, yet Star did not act to rescind, cancel, or non-renew the insurance policy until more than three years had passed.

> **j.       Tenth Affirmative Defense of Lack of Standing.**

Dunlap will introduce the following categories of evidence in support of its tenth affirmative defense.

- Testimony that the information on the insurance application was

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    obtained from Sunwest.

2    • Testimony and documentary evidence that the restrictions in Star's

3    underwriting guidelines, regarding the amount of paper or plastic an

4    insurance customer could handle and still qualify for the insurance

5    program, was proprietary to Star and never disclosed to Dunlap.

6    • Testimony and documentary evidence that Dunlap made no

7    representation to Star regarding the percentage of annual sales revenue

8    that Sunwest derived from the sale of paper and plastic.

9    • Testimony and documentary evidence that Star's purported reliance on

10   representations in the insurance applications was not reasonable

11   because Star and/or its managing agent, knew or should have known

12   that the amount of paper and plastic handled by Sunwest exceeded

13   Star's underwriting guidelines, because Star was aware of its

14   guidelines, saw Sunwest's website, and obtained three inspection

15   reports of the Sunwest facilities (all before the fire).  One of the three

16   inspection reports indicated that nearly 40% of Sunwest's operations

17   involved paper and/or plastic.  Star acknowledged the existence of a

18   discrepancy between what was observed at the Sunwest facilities

19   during an inspection by Star, and the amount of paper and plastic

20   represented on the insurance applications, but did not act to rescind,

21   cancel, or non-renew the insurance policy before the fire, but engaged

22   in post-claim underwriting after the fire and when Star was confronted

23   with a contractual obligation to pay.

24   • Testimony that no intentional or fraudulent misrepresentations were

25   made by the Dunlap parties to Star Insurance regarding the amount of

26   paper and plastic handled by Sunwest.

27   • Testimony that Dunlap was an insurance broker for Sunwest and

28   Sunwest's disclosed principal.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

### k.     Eleventh Affirmative Defense of In Pari Delicto.

Dunlap will introduce the following categories of evidence in support of its eleventh affirmative defense.

- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, regarding the amount of paper or plastic an insurance customer could handle and still qualify for the insurance program, was proprietary to Star and never disclosed to Dunlap.

- Testimony and documentary evidence that Dunlap made no representation to Star regarding the percentage of annual sales revenue that Sunwest derived from the sale of paper and plastic.

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, because Star was aware of its guidelines, saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire).  One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy before the fire, but engaged in post-claim underwriting after the fire and when Star was confronted with a contractual obligation to pay.

- Testimony that no intentional or fraudulent misrepresentations were made by the Dunlap parties to Star Insurance regarding the amount of paper and plastic handled by Sunwest.

- Testimony that Dunlap was an insurance broker for Sunwest and Sunwest's disclosed principal.

        **l.**    **Twelfth Affirmative Defense of Agent of Third-Party.**

Dunlap will introduce the following categories of evidence in support of its twelfth affirmative defense.

- Testimony and documentary evidence that Dunlap was, at all times mentioned in the First Amended Complaint acting as an insurance broker on behalf of Sunwest and that Sunwest was a disclosed principal.

        **m.**    **Thirteenth Affirmative Defense of Ratification.**

Dunlap will introduce the following categories of evidence in support of its thirteenth affirmative defense.

- Testimony and documentary evidence that Star's corporate underwriters, Michelle LeMoine and Bob King requested more information and an inspection to confirm that the amount of paper and/or plastic handled by Sunwest was minimal and that, by February 2012, Star had three inspection reports of the Sunwest facilities, with each report indicating the presence of more than minimal amounts of paper and plastic, and with one report estimating that 40% of Sunwest's operations involved paper and/or plastic.  Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities and an inspection commissioned by Star in September 2011, yet Star did not act to rescind, cancel, or non-renew the insurance policy until more than three years had passed.

        **n.**    **Fourteenth Affirmative Defense of Superseding and Intervening Acts.**

Dunlap will introduce the following categories of evidence in support of its fourteenth affirmative defense.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- Testimony and documentary evidence that Star's corporate underwriters, Michelle LeMoine and Bob King requested more information and an inspection to confirm that the amount of paper and/or plastic handled by Sunwest was minimal and that, by February 2012, Star had three inspection reports of the Sunwest facilities, with each report indicating the presence of more than minimal amounts of paper and plastic, and with one report estimating that 40% of Sunwest's operations involved paper and/or plastic. Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities and an inspection commissioned by Star in September 2011, yet Star did not act to rescind, cancel, or non-renew the insurance policy until more than three years had passed.

**o.    Fifteenth Affirmative Defense of Statute of Frauds.**

Dunlap will introduce the following categories of evidence in support of its eighth affirmative defense.

- Testimony and documentary evidence that (if Star maintains that its claim against Dunlap for indemnity is based upon a contract), that Star's request for indemnity is subject to the statute of frauds.

**p.    Sixteenth Affirmative Defense of Duty.**

Dunlap will introduce the following categories of evidence in support of its sixteenth affirmative defense.

- Testimony that the information on the insurance application was obtained from Sunwest.
- Testimony and documentary evidence that the restrictions in Star's underwriting guidelines, regarding the amount of paper or plastic an insurance customer could handle and still qualify for the insurance program, was proprietary to Star and never disclosed to Dunlap.
- Testimony and documentary evidence that Dunlap made no

representation to Star regarding the percentage of annual sales revenue that Sunwest derived from the sale of paper and plastic.

- Testimony and documentary evidence that Star's purported reliance on representations in the insurance applications was not reasonable because Star and/or its managing agent, knew or should have known that the amount of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines, because Star was aware of its guidelines, saw Sunwest's website, and obtained three inspection reports of the Sunwest facilities (all before the fire). One of the three inspection reports indicated that nearly 40% of Sunwest's operations involved paper and/or plastic. Star acknowledged the existence of a discrepancy between what was observed at the Sunwest facilities during an inspection by Star, and the amount of paper and plastic represented on the insurance applications, but did not act to rescind, cancel, or non-renew the insurance policy before the fire, but engaged in post-claim underwriting after the fire and when Star was confronted with a contractual obligation to pay.

- Testimony that no intentional or fraudulent misrepresentations were made by the Dunlap parties to Star Insurance regarding the amount of paper and plastic handled by Sunwest.

- Testimony that Dunlap was an insurance broker for Sunwest and Sunwest's disclosed principal.

**B.    SUNWEST'S CLAIMS AND ELEMENTS**

**1.    Summary of Sunwest's Claims [L.R. 14-4.1(a),(b)]**

**Third Claim: Negligence.**

Summary: The third claim of Sunwest's Third-Party Complaint alleges negligence against Dunlap. Sunwest maintains that Dunlap had a duty to verify information contained on the insurance applications submitted to Star. [Dkt. 8 page

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

42, line 16-18].

Elements: Sunwest has the burden of proving that: (1) Dunlap, as an insurance broker, had a duty to verify the truth of the information on Sunwest's insurance applications; (2) Dunlap did not verify the information on the insurance application regarding the amount of paper and plastic handled by Sunwest; and (3) the lack of verification caused damage to Sunwest.

Source: CACI 400, 600.

**Fourth Claim: Breach of Fiduciary Duty.**

Summary: The fourth claim of Sunwest's Third-Party Complaint alleges breach of fiduciary duty against Dunlap.  Sunwest maintains that Dunlap had a fiduciary relationship with Sunwest that imposed on Dunlap a duty to notify, advise, investigate and/or inquire of Sunwest prior to making representations contained on Sunwest's insurance application. [Dkt. 8, pgs. 43-44, lines 23-1].

Elements: Sunwest has the burden of proving that: (1) a fiduciary relationship existed between Sunwest and Dunlap by law or contract; (2) Dunlap failed to act as a reasonably careful fiduciary would have acted under the same or similar circumstances; (3) Sunwest was harmed, and (4) Dunlap's conduct was a substantial factor in causing Sunwest's harm.

Source: CACI 4101.

**Fifth Claim: Breach of Contract.**

Summary: The fifth claim of Sunwest's Third-Party Complaint alleges the existence of an implied in fact contract between Dunlap and Sunwest under which Dunlap was to undertake to provide insurance brokerage and risk management services to Sunwest and, specifically, to procure insurance for the benefit of Sunwest that would ensure against Sunwest's risk of loss associated with ownership of the property, and that Dunlap breached the contract by failing to properly procure insurance policies, which Star is now attempting to rescind. [Dkt. 8, Pages 44-45, lines 15-4].

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

Elements: Sunwest has the burden of proving that: (1) Dunlap, by words or conduct, contractually agreed to procure property insurance against risk of loss associated with the ownership of the property; (2) that the conduct of both parties was intentional and each knew, or had reason to know, that the other party would interpret the conduct as an agreement to enter into a contract.; (3) that Sunwest did all, or substantially all, things required under the contract; (4)  Dunlap failed to do something that the contract required; (5) Dunlap's performance under the contract with not excused; (6) Sunwest was harmed by Dunlap's purported failure; and (7) Sunwest was damaged.

Source: CACI 305, VF-300.

**Sixth Claim: Equitable Indemnity.**

Summary: The sixth claim of Sunwest's Third-Party Complaint seeks equitable indemnity against Dunlap premised on the alleged negligent failure to provide competent insurance services to Sunwest based on the contention that Dunlap negligently and recklessly made statements to Star that Dunlap knew or should reasonably have known were inaccurate. Sunwest alleges that as a result of negligence by Dunlap, Star initiated an action to rescind the insurance policies, that Dunlap is responsible for Star's pursuit of the claim for rescission and therefore should indemnify Sunwest for damages, attorney's fees, or costs Star may be awarded. [Dkt. 8, page 45-46, lines 17-2].

Elements: Sunwest has the burden of proving that Dunlap was negligent and that Dunlap's negligence contributed as a substantial factor in causing Sunwest's alleged harm.

Source: CACI 3800.

**Seventh Claim: Declaratory Relief.**

Summary: The seventh claim of Sunwest's Third-Party Complaint requests a judicial declaration of the legal rights and duties of as between Sunwest and Star and that to the extent that any amounts are found owing by Sunwest to Star, for a

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

judicial declaration of whether Dunlap must indemnify Sunwest for those amounts. [Dkt. 8, page 46, lines 12-24].

Elements: Sunwest has the burden of establishing an actual controversy relating to the legal rights and duties of the respective parties.  The request may be made either alone or with other relief and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time.  The judicial declaration may be affirmative or negative in form and effect, and the declaration shall have the force of a final judgment.  The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought.

Source: California Code of Civil Procedure §1060.

**2.      Summary of Dunlap's Affirmative Defenses [L.R. 16-4.1(d), (e)]**

**a.      Affirmative Defense – Comparative Fault.**

Summary:  Dunlap contends that any injury, damage or loss, if any, sustained by Sunwest  was proximately caused and contributed to by fault on Sunwest's part and that Sunwest did not exercise ordinary care in its own behalf at the times and places a set forth in the Third-Party Complaint.

Elements: Dunlap has the burden of establishing that Sunwest was negligent and that Sunwest's negligence was a substantial factor in causing its harm.

Source: CACI 405.

**b.      Affirmative Defense – Assumption of Risk.**

Summary:  Dunlap contends that any damages, injuries or losses suffered by Sunwest herein were caused by risks which Sunwest was well aware of and which Sunwest voluntarily assumed unto itself.

Elements:  Dunlap has the burden of establishing that Sunwest knew of the risk of providing incomplete or inaccurate information for an insurance application; and that Sunwest assume that risk.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    Source: CACI 408, 451, 2330,

2       **c. Affirmative Defense – Waiver.**

3     Summary:  Dunlap contends that Sunwest, during the course of the activities

4    described in the Third-Party Complaint, and by acts, errors and omissions on its

5    own part, has waived any right to claim damage or injury allegedly suffered by

6    virtue of any acts and/or omissions of Dunlap.

7     Elements:  Dunlap has the burden of proving that Sunwest knew of its

8    responsibility to provide complete and accurate information for an insurance

9    application, but that Sunwest freely and knowingly gave up its right to accurately

10   represent the amount of paper and plastic it handled.

11    Source: CACI 336.

12      **d. Affirmative Defense – Estoppel.**

13    Summary:  Dunlap contends that by virtue of certain acts, errors and

14   omissions committed or omitted by Sunwest, Sunwest is estopped from claiming

15   any damage or injury by virtue of any acts of Dunlap.

16    Elements:  Dunlap has the burden of proving that Sunwest knew, or should

17   have known, that the amount of paper and plastic it handled was more than minimal

18   or small amounts; that Sunwest by making that representation to Dunlap must have

19   intended that its conduct would be acted upon by Dunlap; that Dunlap was ignorant

20   of the true state of facts; and that Dunlap relied on the truth of the information

21   provided by Sunwest.

22    Source: Driscoll v. City of Los Angeles, 67 Cal. 2d 297, 305 (1967); Simank

23   Realty, Inc. v. DeMarco, 6 Cal. App. 3d 610, 616 (1970); Safway Steel Products,

24   Inc. v. Lefever, 117 Cal. App. 2d 489, 491 (1953); In re Marriage of Valle, 53 Cal.

25   App. 3d 837 (1975).

26      **e. Affirmative Defense – Failure to State a Claim – First Claim.**

27    Summary:  Dunlap contends that the Third-Party Complaint against Dunlap,

28

1  and the first claim or relief alleged therein fails to state facts sufficient to constitute

2  any claim or cause of action upon which relief can be granted.

3  Elements:  Dunlap has the burden of proving that the Third-Party Complaint

4  does not state facts sufficient to constitute a cause of action by Sunwest against

5  Dunlap.

6  Source: California Code of Civil Procedure §430.10, et seq.

7      **f.    Affirmative Defense – Failure to State a Claim –
         Second Claim.**

8  Summary:  Dunlap contends that the Third-Party Complaint against Dunlap,

9  and the second claim or relief alleged therein fails to state facts sufficient to

10 constitute any claim or cause of action upon which relief can be granted.

11 Elements:  Dunlap has the burden of proving that the Third-Party Complaint

12 does not state facts sufficient to constitute a cause of action by Sunwest against

13 Dunlap.

14 Source: California Code of Civil Procedure §430.10, et seq.

15     **g.    Affirmative Defense – Failure to State a Claim – Third
         Claim.**

16

17 Summary:  Dunlap contends that the Third-Party Complaint against Dunlap,

18 and the third claim or relief alleged therein fails to state facts sufficient to constitute

19 any claim or cause of action upon which relief can be granted.

20 Elements:  Dunlap has the burden of proving that the Third-Party Complaint

21 does not state facts sufficient to constitute a cause of action by Sunwest against

22 Dunlap.

23 Source: California Code of Civil Procedure §430.10, et seq.

24     **h.    Affirmative Defense – Failure to State a Claim –
         Fourth Claim.**

25 Summary:  Dunlap contends that the Third-Party Complaint against Dunlap,

26 and the fourth claim or relief alleged therein fails to state facts sufficient to

27 constitute any claim or cause of action upon which relief can be granted.

28

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Los Angeles*

Elements:  Dunlap has the burden of proving that the Third-Party Complaint does not state facts sufficient to constitute a cause of action by Sunwest against Dunlap.

Source: California Code of Civil Procedure §430.10, et seq.

### i.     Affirmative Defense – Failure to State a Claim – Fifth Claim.

Summary:  Dunlap contends that the Third-Party Complaint against Dunlap, and the fifth claim or relief alleged therein fails to state facts sufficient to constitute any claim or cause of action upon which relief can be granted.

Elements:  Dunlap has the burden of proving that the Third-Party Complaint does not state facts sufficient to constitute a cause of action by Sunwest against Dunlap.

Source: California Code of Civil Procedure §430.10, et seq.

### j.     Affirmative Defense – Failure to State a Claim – Sixth Claim.

Summary:  Dunlap contends that the Third-Party Complaint against Dunlap, and the sixth claim or relief alleged therein fails to state facts sufficient to constitute any claim or cause of action upon which relief can be granted.

Elements:  Dunlap has the burden of proving that the Third-Party Complaint does not state facts sufficient to constitute a cause of action by Sunwest against Dunlap.

Source: California Code of Civil Procedure §430.10, et seq.

### k.     Affirmative Defense – Failure to State a Claim – Seventh Claim.

Summary:  Dunlap contends that the Third-Party Complaint against Dunlap, and the seventh claim or relief alleged therein fails to state facts sufficient to constitute any claim or cause of action upon which relief can be granted.

Elements:  Dunlap has the burden of proving that the Third-Party Complaint does not state facts sufficient to constitute a cause of action by Sunwest against

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Dunlap.

Source: California Code of Civil Procedure §430.10, et seq.

**l.    Affirmative Defense – Failure to Mitigate Damages.**

Summary:  Dunlap contends that Sunwest failed to reasonably mitigate damages and, as a result, any injuries or damages contended to of been suffered by Sunwest should be reduced accordingly.

Elements:  Dunlap has the burden of proving that if Dunlap is found responsible for the original harm claim by Sunwest, then Dunlap must prove that Sunwest could have avoided some or all of the claimed damages through reasonable efforts or expenditures.

Source: CACI 3930.

**m.    Affirmative Defense – Statute of Limitations.**

Summary:  Dunlap contends that the Sunwest's claims are barred by virtue of the statute of limitations found in California Code of Civil Procedure section 338 and 339.

Elements:  Dunlap has the burden of proving that Sunwest filed its Third-Party Complaint more than two years after it knew or should have known of the alleged negligence, breach of fiduciary duty, and breach of implied contract alleged against Dunlap.

Source: California Code of Civil Procedure § 338 and 339

**n.    Affirmative Defense – Laches.**

Summary:  Dunlap contends that by reason of laches on the part of Sunwest, Sunwest is prevented from the claims asserted in its Third-Party Complaint.

Elements:  Dunlap has the burden of proving that Sunwest unreasonably and inexcusably delayed bringing its claims for negligence, breach of fiduciary duty, and breach of implied contract and that either the delay caused prejudice to Dunlap, or that Sunwest acquiesced to the conduct about which it complains.

Source: Magic Kitchen LLC v. Good Things Int'l, 153 Cal. App. 4th 1144,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1157-58 (2007); <u>Johnson v. City of Loma Linda</u>, 24 Cal. 4th 61, 68 (2000); and

<u>A.C. Aukerman Co. v. R.L. Chaides Constr. Co.</u>, 960 F.2d 1020, 1033 (Fed. Cir. 1992).

### o.    Affirmative Defense – Unclean Hands.

<u>Summary</u>:  Dunlap contends that Sunwest's claims, and each of them, are barred by the doctrine of unclean hands.

<u>Elements</u>:  Dunlap has the burden of proving that Sunwest provided Dunlap with incorrect information regarding the amount of paper and plastic Sunwest.

<u>Source</u>: <u>Fibreboard Paper Products Corp. v. East Bay Union of Machinists</u>, 227 Cal. App. 2d 675 (1964); <u>Unilogic, Inc. v. Burroughs Corp.</u> 10 Cal. App. 4th 612, 619-620 (1992).

### p.    Affirmative Defense – Lack of Standing.

<u>Summary</u>:  Dunlap contends that Sunwest lacks standing to pursue Dunlap for the claims asserted in the Third-Party Complaint.

<u>Elements</u>:  Dunlap has the burden of proving that Sunwest does not occupy a fiduciary relationship with Dunlap, and that no implied-in-fact contract existed between Sunwest and Dunlap, to cause Dunlap to be a fiduciary of Sunwest

<u>Source</u>: <u>Jones v. Grewe</u>, 189 Cal. App. 3d 950 (1971); <u>Fitzpatrick v. Hayes</u>, 57 Cal. App. 4th 916, 927 (1997); <u>Kotlar v. Hartford Fire Ins. Co.</u>, 83 Cal. App. 4th 1116 (2000); <u>Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assoc., Inc.</u> 115 Cal. App. 4th 1145 (2004); <u>Mark Tanner Constr. v. HUB Internat. Ins. Servs.</u>, 224 Cal. App. 4th 574 (2014).

### q.    Affirmative Defense – In Pari Delicto.

<u>Summary</u>:  Dunlap contends that Sunwest is itself actively and affirmatively at fault, either fully or partially, for the matters alleged in the Third-Party Complaint and was in pari delicto and as a result thereof may not maintain the present action against Dunlap.

<u>Elements</u>:  Dunlap has the burden of proving that Sunwest is equally

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1   responsible for the harm Sunwest alleges to have sustained by demonstrating that

2   Sunwest is at least equally responsible for the representation that the amount of

3   paper and/or plastic handled by Sunwest was more than minimal.

4          Source: CACI; *Mailand v. Burckle*, 20 Cal. 3d 367 (1978).

5                  **r.     Affirmative Defense – Ratification.**

6          Summary:  Dunlap contends that Sunwest approved and ratified the conduct

7   attributed to Dunlap and by virtue thereof is barred from recovery.

8          Elements:  Dunlap has the burden of proving that Sunwest provided to

9   Dunlap the information on the insurance applications regarding the amount of paper

10  and/or plastic handled by Sunwest and approved the representations.

11         Source: CACI 3710 California Civil Code §2307, 2310.

12                 **s.     Affirmative Defense – Superseding and Intervening
                            Acts.**

13         Summary:  Dunlap contends that the damages sought by Sunwest were

14  proximately caused or contributed to by acts of other parties, persons or entities,

15  and that these acts were and intervening and superseding cause thus barring

16  Sunwest from recovery against Dunlap.

17         Elements:  Dunlap has the burden of proving that the harm Sunwest alleges

18  in its Third-Party Complaint was a result of the conduct of Star, G.J. Sullivan,

19  Pacific Inspections, or others.  Dunlap must prove that the conduct of such other

20  parties occurred after the conduct of Dunlap; that a reasonable person would

21  consider the conduct of the other parties as a highly unusual or an extraordinary

22  response to the situation; that Dunlap did not know and had no reason to expect that

23  such other parties would act in a negligent or wrongful manner; and that the kind of

24  harm resulting from the conduct of such other parties was different from the kind of

25  harm that could have been reasonably expected from Dunlap's conduct.

26         Source: CACI 432; Akins v. County of Sonoma, 67 Cal. 2d 185, 199 (1967);

27  Brewer v. Teano, 40 Cal. App. 4th 1024 (1995).

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**t.      Affirmative Defense – Statute of Frauds.**

Summary:  Dunlap contends that to the extent Sunwest's claims are based upon a contract, such claims are barred by the statute of frauds because the Third-Party Complaint lacks a written contract requiring performance that would be sufficient under the Statute of Frauds.

Elements:  Dunlap has the burden of proving that the contract Sunwest alleges is subject to the statute of frauds, and because it was not in writing, is void as a matter of law.

Source: California Civil Code §1624 (a)(2).

**3.      Key Evidence in Support of Dunlap's Affirmative Defenses to Sunwest's Third-Party Complaint [L.R. 14-4(f)].**

**a.      First Affirmative Defense of Comparative Fault.**

Dunlap will introduce the following categories of evidence in support of its first affirmative defense.

- Testimony that the information contained on the insurance applications was provided to Dunlap by Sunwest.

**b.      Second Affirmative Defense of Assumption of Risk.**

Dunlap will introduce the following categories of evidence in support of its second affirmative defense.

- Testimony that the information contained on the insurance applications was provided to Dunlap by Sunwest.
- Testimony and documentary evidence that Sunwest knew that the amount of income derived by Sunwest from the sale of paper and plastic was more than minimal.

**c.      Third Affirmative Defense of Waiver.**

Dunlap will introduce the following categories of evidence in support of its third affirmative defense.

- Testimony that the information contained on the insurance applications

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**DUNLAP'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1   was provided to Dunlap by Sunwest.

2   • Testimony and documentary evidence that Sunwest knew that the

3   amount of income derived by Sunwest from the sale of paper and

4   plastic was more than minimal.

5   • Testimony and documentary evidence that Sunwest was presented

6   with the opportunity to provide a good faith estimate of the amount of

7   income derived from the sale of paper and plastic, but that Sunwest

8   failed to do so.

9              **d.      Fourth Affirmative Defense of Estoppel.**

10      Dunlap will introduce the following categories of evidence in support of its

11  fourth affirmative defense.

12  • Testimony that the information contained on the insurance applications

13  was provided to Dunlap by Sunwest.

14  • Testimony and documentary evidence that Sunwest knew that the

15  amount of income derived by Sunwest from the sale of paper and

16  plastic was more than minimal.

17  • Testimony and documentary evidence that Sunwest was presented

18  with the opportunity to provide a good faith estimate of the amount of

19  income derived from the sale of paper and plastic, but that Sunwest

20  failed to do so.

21              **e.      Fifth Affirmative Defense of Failure to State a Claim –
                          First Claim.**

22

23      Dunlap will introduce the following categories of evidence in support of its

    fifth affirmative defense.

24

25  • Testimony that the information contained on the insurance applications

    was provided to Dunlap by Sunwest.

26

27  • Testimony and documentary evidence that Sunwest knew that the

    amount of income derived by Sunwest from the sale of paper and

28

plastic was more than minimal.

- Testimony and documentary evidence that Sunwest was presented with the opportunity to provide a good faith estimate of the amount of income derived from the sale of paper and plastic, but that Sunwest failed to do so.

### f.  Sixth Affirmative Defense of Failure to State a Claim – Second Claim.

Dunlap will introduce the following categories of evidence in support of its sixth affirmative defense.

- Testimony that the information contained on the insurance applications was provided to Dunlap by Sunwest.
- Testimony and documentary evidence that Sunwest knew that the amount of income derived by Sunwest from the sale of paper and plastic was more than minimal.
- Testimony and documentary evidence that Sunwest was presented with the opportunity to provide a good faith estimate of the amount of income derived from the sale of paper and plastic, but that Sunwest failed to do so.

### g.  Seventh Affirmative Defense of Failure to State a Claim – Third Claim.

Dunlap will introduce the following categories of evidence in support of its seventh affirmative defense.

- Testimony that the information contained on the insurance applications was provided to Dunlap by Sunwest.
- Testimony and documentary evidence that Sunwest knew that the amount of income derived by Sunwest from the sale of paper and plastic was more than minimal.
- Testimony and documentary evidence that Sunwest was presented with the opportunity to provide a good faith estimate of the amount of

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

4840-5985-1042.1

- 35 -

DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

income derived from the sale of paper and plastic, but that Sunwest failed to do so.

### h. Eighth Affirmative Defense of Failure to State a Claim – Fifth Claim.

Dunlap will introduce the following categories of evidence in support of its eighth affirmative defense.

- Testimony that the information contained on the insurance applications was provided to Dunlap by Sunwest.
- Testimony and documentary evidence that Sunwest knew that the amount of income derived by Sunwest from the sale of paper and plastic was more than minimal.
- Testimony and documentary evidence that Sunwest was presented with the opportunity to provide a good faith estimate of the amount of income derived from the sale of paper and plastic, but that Sunwest failed to do so.

### i. Ninth Affirmative Defense of Failure to State a Claim – Sixth Claim.

Dunlap will introduce the following categories of evidence in support of its ninth affirmative defense.

- Testimony that the information contained on the insurance applications was provided to Dunlap by Sunwest.
- Testimony and documentary evidence that Sunwest knew that the amount of income derived by Sunwest from the sale of paper and plastic was more than minimal.
- Testimony and documentary evidence that Sunwest was presented with the opportunity to provide a good faith estimate of the amount of income derived from the sale of paper and plastic, but that Sunwest failed to do so.

**DUNLAP'S MEMORANDUM OF
CONTENTIONS OF FACT AND LAW**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**j.     Tenth Affirmative Defense of Failure to State a Claim – Seven Claim.**

Dunlap will introduce the following categories of evidence in support of its tenth affirmative defense.

- Testimony that the information contained on the insurance applications was provided to Dunlap by Sunwest.

- Testimony and documentary evidence that Sunwest knew that the amount of income derived by Sunwest from the sale of paper and plastic was more than minimal.

- Testimony and documentary evidence that Sunwest was presented with the opportunity to provide a good faith estimate of the amount of income derived from the sale of paper and plastic, but that Sunwest failed to do so.

**k.     Eleventh Affirmative Defense of Failure to Mitigate Damages.**

Dunlap will introduce the following categories of evidence in support of its eleventh affirmative defense.

- Testimony that the information contained on the insurance applications was provided to Dunlap by Sunwest.

- Testimony and documentary evidence that Sunwest knew that the amount of income derived by Sunwest from the sale of paper and plastic was more than minimal.

- Testimony and documentary evidence that Sunwest was presented with the opportunity to provide a good faith estimate of the amount of income derived from the sale of paper and plastic, but that Sunwest failed to do so.

**l.     Twelfth Affirmative Defense of The Statute of Limitations.**

Dunlap will introduce the following categories of evidence in support of its

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  twelfth affirmative defense.

2  • Testimony and documentary evidence that Sunwest had knowledge of

3  the representations made in the insurance applications regarding the

4  amount of paper and plastic handled by Sunwest more than three years

5  before Sunwest filed its Third Party Complaint.

6  **m.  Thirteenth Affirmative Defense of Laches.**

7  Dunlap will introduce the following categories of evidence in support of its

8  thirteenth affirmative defense.

9  • Testimony that the information contained on the insurance applications

10  was provided to Dunlap by Sunwest.

11  • Testimony and documentary evidence that Sunwest knew that the

12  amount of income derived by Sunwest from the sale of paper and

13  plastic was more than minimal.

14  • Testimony and documentary evidence that Sunwest was presented

15  with the opportunity to provide a good faith estimate of the amount of

16  income derived from the sale of paper and plastic, but that Sunwest

17  failed to do so.

18  **n.  Fourteenth Affirmative Defense of Unclean Hands.**

19  Dunlap will introduce the following categories of evidence in support of its

20  fourteenth affirmative defense.

21  • Testimony that the information contained on the insurance applications

22  was provided to Dunlap by Sunwest.

23  • Testimony and documentary evidence that Sunwest knew that the

24  amount of income derived by Sunwest from the sale of paper and

25  plastic was more than minimal.

26  • Testimony and documentary evidence that Sunwest was presented

27  with the opportunity to provide a good faith estimate of the amount of

28  income derived from the sale of paper and plastic, but that Sunwest

1    failed to do so.

2          **o.**    **Fifteenth Affirmative Defense of Lack of Standing.**

3        Dunlap will introduce the following categories of evidence in support of its

4    fifteenth affirmative defense.

5            • Testimony and evidence that the relationship between Sunwest and

6              Dunlap, of a customer and an insurance broker, is not a recognized

7              fiduciary relationship.

8            • Testimony and evidence that no contract was formed or exist as

9              between Sunwest and Dunlap of the nature alleged in the Third Party

10             Complaint.

11          **p.**    **Sixteenth Affirmative Defense of In Pari Delicto.**

12        Dunlap will introduce the following categories of evidence in support of its

13    sixteenth affirmative defense.

14            • Testimony that the information contained on the insurance applications

15              was provided to Dunlap by Sunwest.

16            • Testimony and documentary evidence that Sunwest knew that the

17              amount of income derived by Sunwest from the sale of paper and

18              plastic was more than minimal.

19            • Testimony and documentary evidence that Sunwest was presented

20              with the opportunity to provide a good faith estimate of the amount of

21              income derived from the sale of paper and plastic, but that Sunwest

22              failed to do so.

23          **q.**    **Eighteenth Affirmative Defense of Ratification.**

24        Dunlap will introduce the following categories of evidence in support of its

25    eighteenth affirmative defense.

26            • Testimony that the information contained on the insurance applications

27              was provided to Dunlap by Sunwest.

28            • Testimony and documentary evidence that Sunwest knew that the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

amount of income derived by Sunwest from the sale of paper and plastic was more than minimal.

- Testimony and documentary evidence that Sunwest was presented with the opportunity to provide a good faith estimate of the amount of income derived from the sale of paper and plastic, but that Sunwest failed to do so.

### r. Nineteenth Affirmative Defense of Superseding and Intervening Acts.

Dunlap will introduce the following categories of evidence in support of its nineteenth affirmative defense.

- Testimony and documentary evidence that after Star received the insurance applications containing the representations of the amount of paper and plastic handled by Sunwest, Star corporate underwriter Michelle LeMoine viewed the Sunwest website, questioned the accuracy of the representation on the application regarding the amount of paper and plastic and asked Star's managing general agent, G.J. Sullivan to obtain all details regarding the amount of such commodities handled by Sunwest. Star corporate underwriter Bob King later made a request to Sullivan to obtain an inspection of the Sunwest's facilities to confirm whether the amount of paper and plastic handled by Sunwest was minimal. Sullivan thereafter obtained an inspection and possessed three inspection reports months before the 2012-2013 insurance policy was issued and over a year before the fire loss occurred at Sunwest.  Notwithstanding that Star possessed such information it issued the 2012-2013 insurance policy and did not move to rescind the policy until after the fire loss had already occurred, and Sunwest made a claim for insurance benefits.

- Testimony and documentary evidence that Dunlap is not advised by

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

**DUNLAP'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Star or Sullivan that Star intended to remove coverage for the property located outside and within 100 feet of the Sunwest building.

        **s.**      **Twentieth Affirmative Defense of Statute of Frauds.**

Dunlap will introduce the following categories of evidence in support of its twentieth affirmative defense.

- Testimony and documentary evidence that duties and obligations Sunwest maintains were owed under the alleged implied in fact contract fall within the statute of frauds.
- Testimony that no written contract exists between Sunwest and Dunlap.

## III.   ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(H)]

Dunlap believes the following evidence is inadmissible:

- The statements made in the examination under oath of Hanan Stanley, President of Sunwest.
- That Hanan Stanley has cancer.
- A purported Department of Insurance investigation of Dunlap.
- Testimony by Star's expert witness Andrew Barile, that Thomas Dunlap is a "liar."
- Aerial photographs/images depicting the Sunwest facilities.
- Expert testimony that Dunlap had a duty to verify the truthfulness of the representations by Sunwest to Dunlap regarding the amount of paper and plastic handled by Sunwest.

## IV.   IDENTIFICATION OF ISSUES OF LAW [L.R. 16-4.1(I)

Dunlap believes that the following issues of law are in dispute:

- Whether a retail insurance broker has a duty to verify the truthfulness of representations made to it by an insurance customer.
- Whether a retail insurance broker is a fiduciary of its customer.
- Whether a retail insurance broker owes a legal duty to an insurer

- 41 -
**DUNLAP'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  beyond furnishing the insurance submission.

2  • Whether Star can properly pursue a claim against Dunlap when

3  Dunlap was acting as a broker for a disclosed principal – Sunwest.

4  • Whether Star can properly pursue a claim against Dunlap when

5  Dunlap did not provide fraudulent material misinformation to Star, and

6  Dunlap had no knowledge that Star would have declined to quote or

7  bind coverage if Sunwest's application if more than 15% of Sunwest's

8  annual income was derived from the sale of paper or plastic.

9  • Whether Star can properly pursue damages or attorney's fees from

10  Dunlap, even if Star loses its action for rescission.

## V.  BIFURCATION OF ISSUES [L.R. 16-4.3]

The parties agree that the determination of the amount of attorney's fees that Star and/or Sunwest may be entitled to recover, if any, will be addressed by the Court as a final phase of the trial.

## VI.  JURY TRIAL [L.R. 16-4.4]

### A.  Issues Triable to the Jury

A timely demand for jury trial has been made. The following issues are triable to the jury:

1.  The claim by Star for negligent misrepresentation.

2.  The claim by Sunwest for negligence and breach of contract.

3.  All of Dunlap's affirmative defenses, with the exception of the affirmative defenses identified in the following section as issues triable to the court.

4.  The amount of damages claimed by Sunwest.

## VII.  ISSUES TRIABLE TO THE COURT

The following issues are triable to the Court:

1.  Star's equitable claim for rescission.

2.  Sunwest's equitable claim for indemnity.

3.  Dunlap's equitable affirmative defenses of waiver, estoppel, latches,

1   and unclean hands.

2        4.    The amount of attorney's fees, if any, Star and/or Sunwest may

3   recover.

4   **VIII.  ATTORNEYS FEES [L.R. 16-4.5]**

5        Both Star and Sunwest are pursuing claims for attorney's fees against

6   Dunlap.

7   **IX.    ABANDONMENT OF ISSUES [L.R. 16-4.6]**

8        Dunlap is abandoning the 17th affirmative defense of "Agent of Third Party"

9   asserted in its Answer to Sunwest's Third-Party Complaint.  (That affirmative

10  defense, however, is still being asserted against Star's First Amended Complaint).

11

12  Dated:  February 23, 2015          ROPERS, MAJESKI, KOHN & BENTLEY

13

14

15                                     By: */s/ Lawrence Borys*
                                          LAWRENCE BORYS
16                                        MICHAEL T. OHIRA
                                          JAMIE M. KURTZ
17                                        Attorneys for Defendants and Third Party
                                          Defendants DUNLAP INSURANCE
18                                        AGENCY LLC; DEAN T. DUNLAP;
                                          THOMAS R. DUNLAP

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles