LAWRENCE BORYS (SBN 60625)
LBORYS@RMKB.COM
MICHAEL OHIRA (SBN126137)
MOHIRA@RMKB.COM
JAMIE M. KURTZ (SBN255271)
JKURTZ@RMKB.COM
ROPERS, MAJESKI, KOHN & BENTLEY
445 S. Figueroa Street, Suite 3000
Los Angeles, CA 90071-1619
Telephone: (213) 312-2000
Facsimile: (213) 312-2001

Attorneys for Defendants and Third Party Defendants THOMAS DUNLAP INSURANCE AGENCY LLC; DEAN T. DUNLAP; THOMAS R. DUNLAP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STAR INSURANCE COMPANY, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>SUNWEST METALS, INC., a California corporation,<br><br>Defendant. | CASE NO. SACV13-1930 DFM<br><br>DATE: March 16, 2015<br>TIME: 9:00 a.m.<br>CTRM: 6A<br><br>**MOTION IN LIMINE #1, BY DEFENDANTS AND THIRD-PARTY DEFENDANTS THOMAS DUNLAP INSURANCE AGENCY, LLC, THOMAS DUNLAP, AND DEAN DUNLAP TO EXCLUDE EXPERT TESTIMONY BY STAR'S EXPERT WITNESS ANDREW BARILE PURSUANT TO F.R.E. RULES 403, 702 AND 703 ON THE GROUNDS OF LACK OF QUALIFICATION**<br><br>[Filed separately but concurrently Proposed Order]<br><br>Trial: March 31, 2015<br>Pre-Trial Conf.: March 16, 2015<br>Complaint Filed: December 12, 2013<br>3rd Party Cmp. February 6, 2014 |
| AND RELATED COUNTER-ACTIONS, AND THIRD-PARTY COMPLAINT. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on <u>March 16, 2015 at 9:00 AM</u> or as soon thereafter as counsel may be heard before the Hon. Douglas F. McCormick in Courtroom 6A of the above-caption Court, located at 411 W. 4th St., Santa Ana, CA 92701, Defendants / Third-Party Defendants Thomas Dunlap Insurance Agency, LLC, Thomas Dunlap, and Dean Dunlap (Dunlap) will move the Court, in limine, for an order excluding the testimony of Andrew Barile, Plaintiff Star Insurance Company's expert witness, regarding the standard of care and/or alleged breaches of duty by Dunlap.

This Motion is made on the grounds that Mr. Barile is not qualified to offer his opinions under Federal Rule of Evidence, Rules 403, 702, and 703.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the declaration of Michael T. Ohira and exhibits thereto, and on such other matter as the Court may entertain at the hearing of this matter.

This Motion is made following a conference between counsel for Dunlap and counsel for Star pursuant to Local Rule 7-3. (Declaration of Michael T. Ohira ¶ 4, Ex. C).

Dated: March 5, 2015　　　　　　　　ROPERS, MAJESKI, KOHN & BENTLEY

By: */s/ Michael T. Ohira*
　　LAWRENCE BORYS
　　MICHAEL T. OHIRA
　　JAMIE M. KURTZ
　　Attorneys for Defendants and Third Party
　　Defendants DUNLAP INSURANCE
　　AGENCY LLC; DEAN T. DUNLAP;
　　THOMAS R. DUNLAP

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

## I. DESCRIPTION OF THE REQUESTED RELIEF

Pursuant to the Federal Rules of Evidence ("F.R.E.") 403, 702 and 703, Defendant/Third-Party Defendants the Thomas Dunlap Insurance Agency, LLC, Thomas Dunlap, and Dean Dunlap (collectively "Dunlap") seek to preclude Plaintiff Star Insurance Company's expert, Andrew Barile from offering his report and any testimony at trial regarding the duty of care owed by Dunlap, and any breaches of duty by Dunlap.

F.R.E. 702, as explicated by the familiar *Daubert* line of cases, requires that, to be admissible, expert testimony must be the product of reliable principles and methods. It must also be based upon sufficient facts or data and apply the principles and methods reliably to those facts. Here, there simply is no such method, Mr. Barile's analysis and opinion is merely the "ipse dixit of the expert." Kumho Tire Co., Ltd., v. Carmichael, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (U.S. 1999). Mr. Barile's deposition testimony conclusively demonstrates his lack of qualification to offer any opinion regarding the standard of care of a retail insurance broker such as Dunlap; what duties are owed by a retail insurance broker, and any breaches of those duties. Mr. Barile relies on unsupportable factual narration as the output, as well as the source, of his opinion.

For similar reasons, Mr. Barile's report violates F.R.E. 703. That rule provides that, regardless of the expert's methodology, admissibility of hearsay evidence purporting to support the expert's testimony is limited. The probative value of the hearsay testimony must substantially outweigh the danger that the Court will use the hearsay for its truth. Here, there is little to no bona fide expert opinion to begin with, so there is no legitimate need to admit Mr. Barile's hearsay testimony, that Dunlap was untruthful, breached any duties, or fell below the standard of care of a retail insurance broker.

Counsel for Dunlap and counsel for Star met and conferred regarding the substance of this motion in limine and, on March 2, 2015 and March 4, 2015.

1 Counsel for Star represented that Star would *not* oppose this motion to the extent
2 that the motion sought to bar Mr. Barile from testifying against Dunlap, but that
3 Star was not withdrawing him as an expert entirely. Copies of the email exchanges
4 between counsel are attached as Exhibit "C" to the declaration of Michael T. Ohira
5 filed separately but concurrently herewith in support of this motion.

## II. OPINIONS TO BE EXCLUDED

Because Mr. Barile does not follow the clear standards set forth in F.R.E. 702 and its complimentary case law, the following portions of Mr. Barile's report should be stricken and he should be precluded from testifying regarding such matter at trial:

> **Opinion 4**: Dunlap's handling of the Sunwest account fell below the standard of care for a retail insurance broker.
>
> It's clear from the depositions that Dunlap misrepresented the exposure. Dunlap consistently called this a mental recycler when it was primarily a paper recycler. Dunlap consistently provided false information about the commodities recycled by Sunwest. There are actually four blatant underwriting misrepresentations:
>
> - The 2011 supplemental application saying "small amounts" of paper and plastic (Ex.C);
> - The July 7, 2011 e-mail saying the revenue was $5,000 for plastics and $10,000 for paper (Ex. D);
> - The 2012 supplemental application saying "min" for paper and plastics (Ex. E); and
> - The November 2, 2012 e-mail stating the annual revenue was $4M Aluminum and $1M Iron/Steel (Ex. F).
>
> These document the exact misrepresentations that Dunlap gave in this case that clearly violates the custom and practice of an experience retail broker. Dunlap clearly misrepresented the risk's disclosures, as evidenced by Mr. Stanley's comments that for the prior five years Sunwest had been primarily a paper recycler. This was also confirmed by the accountant's review of Sunwest's daily records.
>
> A retail broker who talk to nearly a dozen markets trying to place the risk would understand based on conversations with those other markets that this was a difficult risk to place and the reason for that difficulty. A retail broker would usually ask why the insurer doesn't want to write the risk when it is decline. The reason the industry doesn't

> write paper recyclers because they burn and arson can be common, like the garment industry.
>
> Based on reading the deposition, it appears that during the renewal Dean Dunlap find the applications purportedly for the insured. Obviously this is a violation of his duties as a retail broker.
>
> A retail broker has an obligation to provide truthful information in terms of underwriting exposures, and to obtain that information from the insured. Dunlap's conduct fell below the standard of care for an insurance broker.

V. **CONCLUSION:**

> . . . Dunlap's conduct in handling the Sunwest account fell below the standard of care.

III. **BACKGROUND**

Sunwest is a recycling collection center that collects metal, glass, cardboard, paper, plastic, and other materials for resale to third-parties. On August 1, 2011 Sunwest purchased fire insurance from Star, and subsequently renewed the policy through August 1, 2013. Dunlap was the insurance broker for Sunwest and submitted the insurance applications to Star through Star's managing general agent, G.J. Sullivan.

On April 21, 2013, Sunwest experienced a fire at its facility and made an insurance claim to Star. Star made one payment of $130,000 toward cleanup costs (Dkt. 8 ¶ 74), then announced an intention to *rescind* the original and renewal policies. Star contends that the insurance applications misrepresented the amount of paper and plastic handled by Sunwest; that Star could not have known before the fire that the level of paper and plastic handled by Sunwest exceeded Star's underwriting guidelines; and that if Star had been aware of that it would not have sold insurance to Sunwest. Star contends that Dunlap breached the standard of care of a retail insurance broker and hired Andrew Barile to opine that Dunlap's handling of the Sunwest account fell below the standard of care for a retail insurance broker. (Ex. "A" - Barile report, Opinion 4, Pg. 6-7).

1  IV.  **ARGUMENT**

2      A.  **Mr. Barile Fails to Satisfy The Standards Set Forth in F.R.E. 702 and Related Legal Doctrine to Offer Expert Testimony Regarding the Standard of Care of a Retail Insurance Broker.**

In deciding the admissibility of expert testimony, courts have a "gatekeeping obligation" to ensure expert testimony is reliable. <u>Kumho</u> <u>Id</u>. At 141. F.R.E. 702 requires that such testimony satisfy three separate relevance and reliability standards: (1) expert testimony must be based upon sufficient facts or data, (2) expert testimony must be the product of reliable principles and methods, and (3) the expert witness must have applied the principles and methods reliably to the facts of the case. F.R.E. 702 provides that a witness who demonstrates qualification as an expert through knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

As explained in the notes to F.R.E. 702, <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579, 593-95, 113 S. Ct. 2786, 125 L. Ed. 2d 469, (U.S. 1993) set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the Daubert Court are:

> (1) whether the experts technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether

the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. (F.R.E. 702 Advisory Committee Notes.)

Additionally, Congress noted several other factors that may bear on the reliability and admissibility of expert testimony, including:

- Whether the expert's opinion grew "naturally and directly out of research" that an expert "conducted independent of the litigation, or whether [he has] developed [his] opinions expressly for purposes of testifying," (F.R.E. 702 Advisory Committee Notes (*quoting Daubert v. Merrell Dow Pharmaceuticals, Inc*., 43 F.3d 131 1, 1317 (9th Cir. 1995)), and

- Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion," (*Id. citing General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Mr. Barile falls woefully short of qualifying as an expert witness regarding the standard of care of a retail insurance broker and his deposition testimony reveals that his testimony is acutely unreliable.

**B.  Mr. Barile is Unqualified to Offer Expert Opinion Regarding Dunlap's Standard of Care**

Mr. Barile's deposition testimony revealed that he is decidedly unqualified to offer any expert opinion regarding Dunlap's standard of care as a retail insurance broker, particularly one placing insurance for a scrap recycler, let alone whether Dunlap breached that standard and caused any harm to Star.

### 1. Mr. Barile is Not, and Has Never Been Licensed as a Retail Insurance Broker [26:19-23]

Mr. Barile opines in his report (Opinion #4) that Dunlap's handling of the Sunwest account fell below the standard of care for a retail insurance broker; however at deposition he testified that he is not and has never been a licensed retail insurance broker:

> Q.   Now, your report has a section captioned Roman I, Qualifications, right?
>
> A.   Yes.
>
> Q.   And one of the qualifications you list there is that you have served as a retail insurance broker; correct?
>
> A.   Well, <u>no</u>, it says has -- or has been a consultant to the following types of firms, so I've been either owned, employed by or been a consultant for the following types of firms.
>
> Q.   Okay. Do you have a -- an insurance broker license?
>
> A.   <u>No</u>.
>
> Q.   Have you ever?
>
> A.   <u>No</u>.

(Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 26, lines 19-23)

### 2. Mr. Barile Has Never Been Involved in the Administration of a Scrap Insurance Program [34:13-21]

Mr. Barile testified at deposition that he has never been involved in the administration of a scrap insurance program – the type of program at issue in this case:

> Q.   Okay. Have you ever been involved in the administration of a scrap insurance program?

> A. Never made it. We looked at two programs when I was with Arrowhead General Insurance Agency and came to the conclusion that we couldn't find a carrier to represent the right class, so we didn't do it.
>
> Q. Okay. So the answer really is no, you've never actually been involved?
>
> A. Never consummated a deal, right.

(Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 34, lines 13-21).

### 3. Mr. Barile Has Never Represented a Scrap Dealer Seeking Placement of Insurance [34:22-25]

Mr. Barile testified at deposition that he has not ever represented a scrap dealer seeking the placement of insurance – the very type of insured (Sunwest) at issue in this case:

> Q. Okay. And have you ever represented a scrap dealer in connection with a risk management or the placement of their insurance?
>
> A. No.

(Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 34, lines 22-25).

### 4. Mr. Barile Has Never Provided Consulting Services to a Retail Broker Regarding Placement of Insurance for a Scrap Dealer Risk [35:1 to 4];

Mr. Barile testified at deposition that he has not ever provided consulting services to a retail broker about the placement of insurance for a scrap dealer:

> Q. And you've never -- have you ever provided consulting services to a retail broker in connection with the placement of insurance for a scrap dealer risk?
>
> A. No.

Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 35, lines 1-4).

**5. Mr. Barile Has Never Been Involved As a Consultant for an MGA or an Insurance Company in Terms of Deciding Whether to Accept a Risk from a Scrap Dealer [35:5-8]**

Mr. Barile testified at deposition that he has not ever been involved as a consultant for a managing general agent or an insurance company in terms of deciding whether to accept a risk from a scrap dealer:

> Q. Have you ever been involved as a consultant for an MGA or an insurance company in terms of deciding whether or not to accept a risk from a scrap dealer?
>
> A. <u>No</u>.

(Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 35, lines 5-8).

**C. Mr. Barile is Without Sufficient Facts to Offer Any Opinions About Dunlap and Resorts to Guessing**

Under F.R.E. the 702 expert opinions must be the product of reliable principles. In contrast, Mr. Barile resorts to "guessing" that Dunlap acted improperly. Examples include the following:

> Q. Well, if I ask you for a specific act of malpractice, if you will, by Mr. Tom Dunlap, can you give me one?
>
> A. Permitting it to go on, permitting his son to do these things. I do not -- I mean I don't -- didn't look at it that way, **I guess**. Sorry.

(Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 42, lines 18-23).

> Q. Okay. And that's all right. But you understand, I'm sure, Mr. Ohira is going to have other questions for you on this topic because he represents all three of them, but I want to broadly understand if there's anything that you are specifically critical of Mr. Dean Dunlap for having done in connection with this case?
>
> A. Well, they specifically misrepresented the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

exposure. Now, to put it on the blame on which individual in the firm that did it, **I guess** I'd have to readdress that to get into who did it. I didn't – I didn't look at it that way.

(Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 43, lines 2-13).

> Q. And that's all right, mind you, I mean if we're just defending Mr. -- if we're considering the case against Dunlap Insurance, I understand that in your mind it doesn't matter which of them are the guilty parties, if you will, because Dunlap Insurance is responsible for all of them, right?
>
> A. Yes. They are, and **I guess**, you know, if – I mean I do -- I guess I am critical of people specifically when you look at the detail of the report where **I guess**, you know, I've identified Dean Dunlap, so I don't see my changing my opinion of that. I mean that is my opinion.

(Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 43, lines 14-25).

> Q. All right. And so my question to you is do you have an opinion as to whether or not Mr. Tom Dunlap had the reasonable basis for believing the representations in his email to Ms. Priolo on July 11, 2011?
>
> MR. OHIRA: Lacks foundation, calls for speculation.
>
> THE WITNESS: No, I can't -- I don't know what's in the man's head, **I guess**.

(Ex. "B" - February 6, 2015 deposition of Andrew Barile, page 60-61, lines 22-4).

**D. Mr. Barile Fails to Satisfy The Standards Set Forth in F.R.E. 703 and Related Legal Doctrine to Offer Expert Testimony Regarding the Standard of Care of a Retail Insurance Broker.**

The wholly separate provisions of F.R.E. 703 lead to a very similar result. Even if the Court were to find some kernel of an expert analysis contained in Mr.

Barile's regurgitation of unproven allegations, Rule 703 clearly provides that an expert may not merely relate hearsay to the finder of fact. Paddack v. Dave Christensen, Inc., 745 F.2d 1254 (9th Cir. Or. 1984). This is supported by the 2000 Advisory Committee Note to F.R.E. 703, which stipulates that "[r]ule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted."

Rule 703 compels the use of a balancing test to determine whether the evidence is admissible, providing in part that facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. See also, Turner v. Burlington Northern Santa Fe R.R., 338 F.3d 1058 (9th Cir. Mont. 2003).

Numerous courts have applied these provisions to exclude expert testimony. In Paddack, 745 F.2d 1254, 1262 (9th Cir. 1984), for example, the court found that audit reports were hearsay and that the expert could not rely on such evidence to establish the truth of what they assert. In Turner, 338 F.3d 1058, 1062, the court found that because the probative value that would result from the admission of a lab report relied upon by the expert did not substantially outweigh its prejudicial effect, the expert was not allowed to testify about the report.

The sweeping statements made by Mr. Barile are highly prejudicial and useless coming from a witness without firsthand knowledge. Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing facts only by the ipse dixit of the expert. GE v. Joiner, 522 U.S. 136; 118 S. Ct. 512; 139 L. Ed. 2d 508 (U.S. 1997).

//

//

## V. **CONCLUSION**

For the reasons mentioned above, the Court should grant Dunlap's Motion in Limine #1 and exclude Opinion 4, and the last sentence of the Conclusion, in the January 14, 2015 report of Andrew Barile, and the parties should then be ordered to refrain from eliciting any testimony from Mr. Barile at trial regarding any opinions he may have regarding the standard of care and/or breaches of duty by The Thomas Dunlap Insurance Agency, LLC, Thomas Dunlap, and/or Dean Dunlap.

Dated: March 5, 2015          ROPERS, MAJESKI, KOHN & BENTLEY

By: */s/ Michael T. Ohira*
LAWRENCE BORYS
MICHAEL T. OHIRA
JAMIE M. KURTZ
Attorneys for Defendants and Third Party Defendants DUNLAP INSURANCE AGENCY LLC; DEAN T. DUNLAP; THOMAS R. DUNLAP

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

# DECLARATION OF MICHAEL T. OHIRA

I, Michael T. Ohira, declare as follows:

1. I am a member of the State Bar of California admitted to practice before the United States District Court for the Central District of California and am an attorney with Ropers Majeski Kohn and Bentley, counsel of record herein for Defendants and Third-Party Defendants the Thomas Dunlap Insurance Agency, LLC, Thomas Dunlap, and Dean Dunlap. I offer this declaration in support of the motion in limine by the Dunlap parties to exclude expert testimony by Andrew Barile. I have personal knowledge of the matter set forth herein and if called as a witness would testify as follows:

2. This office received a designation of expert witnesses served by counsel for plaintiff Star Insurance Company. Included was a report by Andrew J. Barile dated January 14, 2015. A true and correct copy of that report is submitted herewith as Exhibit "A".

3. On February 6, 2015 the expert deposition of Mr. Barile was taken in this matter. Submitted herewith as Exhibit "B" are true and correct copy of excerpts from Mr. Barile's deposition transcript, specifically, pages 26, 34, 35, 42, 43, 60, and 61.

4. Pursuant to Local Rule 7-3, on March 2, 2015 and March 4, 2015 I met and conferred with Daphne Subar and Lisa Alderton, counsel for Star, about our intent to move, in limine, to exclude Mr. Barile's testimony against the Dunlap parties. A true and correct copy of the email exchange is submitted herewith as Exhibit "C." Counsel for Star indicated that while they would not oppose Dunlap's

motion, Mr. Barile would not be withdrawn as an expert witness.

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

Executed this 5th day of March, 2015 at Los Angeles, California.

/s/ Michael T. Ohira